607 So.2d 979 (1992)
Michael BROUSSARD
v.
Craig F. ROMERO.
No. 92-1278.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1992.
*980 Anthony Fazzio, Lafayette, for plaintiff/appellant.
Henry C. Perret, Lafayette, for defendant/appellee.
EN BANC.
This is an election contest. The plaintiff, Michael Broussard, filed this suit to disqualify the defendant, Craig Romero, as a candidate for election to the Louisiana State Senate, District 22, alleging that Mr. Romero had not been domiciled in the district for one year preceding the qualification date for the state senate race as required by Article 3, Section 4, Louisiana Constitution of 1974. The trial court ruled that Mr. Romero was an eligible candidate and the plaintiff has perfected this appeal.
The sole issue on appeal is whether Craig Romero has the domiciliary qualification necessary. In a similar election suit, Messer v. London, 438 So.2d 546 (La.1983), the Louisiana Supreme Court set forth the applicable law as follows:
LAW
Article 3, Section 4, Louisiana Constitution of 1974, requires that a candidate for the legislature must have been "actually domiciled for the preceding year" in the district from which he or she seeks election. LSA-R.S. 33:1225 provides that police jurors shall possess the same qualifications as members of the House of Representatives.
The general definition of domicile is contained in LSA-C.C. art. 38:
"The domicile of each citizen is in the parish wherein he has his principal establishment.
"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."
LSA-C.C. art. 41 deals with change of domicile:
"A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there."
LSA-C.C. arts. 42 and 43 govern "proof of intent" to change domicile and state:
Article 42: "This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. "This declaration is made in writing, is signed by the party making it, and registered by the recorder."
Article 43: "In case this declaration is not made, the proof of this intention shall depend upon circumstances."
* * * * * *
Residence and domicile are not synonymous terms. A person can have several residences but only one domicile. Taylor v. State Farm Mutual Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). Domicile is a person's principal domestic establishment,1 as contrasted to a business establishment. A man and wife are presumed to have the same domicile. Robinson v. Standard Oil Company of Louisiana, 194 La. 904, 195 So. 351 (1940).
A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. Succession of Rhea, 227 La. 214, 78 So.2d 838 (1955). There is a presumption against change of domicile. In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1952).
The phrase "actually domiciled" in the Constitution of 1974 requires that one holding legislative office have a real rather than fictitious domicile in the area represented. However, the question of "intention", the crux of the preceding *981 codal articles, remains viable. See 5 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 328.
When a person holds public office, the law presumes that his domicile continues in the place where he exercises his public functions. Oakey v. Eastin, 4 La. 69 (1832). Any doubt should be resolved in favor of allowing a candidate to run for public office. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3 Cir.1979). The burden of proof is on the party contesting candidacy.
The trial testimony showed that Craig Romero and his wife moved into a home in Coteau in 1984. This home was in District 22 and is located on property owned by his family's estate. This estate consists of one hundred acres mainly utilized to raise cattle. In 1986, Mrs. Romero built a home with her separate funds on property owned by her parents near Spanish Lake. This home is outside of District 22. The home is located within a few hundred yards of the home of Mrs. Romero's parents. According to the testimony of Mr. & Mrs. Romero, Mr. Romero chose to live at the Coteau home the majority of his time. According to Mrs. Romero's testimony, she and the children spent about one-half of their time at each residence, but that her husband spent most of his time at the Coteau home.
In the latter part of 1990 and the spring of 1991, Mr. Romero began to develop the property next to the Coteau home with the intention to ultimately build another home on this property. He tore fences down, put up electric fences, planted trees and grass, and graded the grounds.
In the summer of 1991, the Romeros had an argument as to whether to build an addition onto the Spanish Lake residence or continue developing the Coteau estate for their future home. The testimony revealed that Mrs. Romero desired to build the addition on the Spanish Lake home in order to remain close to her aging parents who had recently retired. The Romeros at that time had five children and the family was not comfortable living in the 1300 square foot home at Spanish Lake. Mr. Romero finally agreed to put the construction of the new home temporarily on hold, and the addition was built on the Spanish Lake home. During the construction of the addition the family lived at the Coteau home.
Other evidence introduced at trial showed that prior to the election of October 3, 1992, Mr. Romero voted in precincts which were outside of the Coteau home area. On July 15, 1992, Mr. Romero transferred his voting registration to his Coteau address. Mr. Romero's driver's license contained the Coteau address. Mr. Romero listed his Spanish Lake address as his domicile on the qualifying form which he presented at the time he qualified for the parish president election on July 17, 1987.
The trial court found that some of the evidence did cast suspicion as to Romero's Coteau domicile, but determined the preponderance of the evidence revealed the Coteau home to be his real domicile. The trial court found the testimony of the Romeros to be credible and supported by other evidence. (The trial court's reasons for judgment are attached to this opinion).
The law is clear and in this case the only question is a factual inquiry to determine what was Mr. Romero's intent. Although evidence was introduced to show his intent to change domicile in 1986, evidence was also introduced to negate such an intent. The trial court resolved the factual issue of intent in favor of Craig Romero. Unless a finding of fact by the trial court is manifestly erroneous, that finding of fact will not be disturbed on appeal. In this case, Mr. Broussard has not shown that the trial court's finding of fact is manifestly erroneous. All costs are assessed to appellant.
AFFIRMED.

ATTACHMENT

15th Judicial District Court

Vermilion Parish, Louisiana

Michael Broussard

versus

Craig Romero

Number: 92-62080-D

REASONS FOR JUDGMENT

Oct. 23, 1992
This suit was instituted by Michael Broussard who seeks to disqualify Craig *982 Romero from the Louisiana state senate race for District 22. He alleges that Mr. Romero has not been domiciled in the district for one year preceding the qualification date for the state senate race which is required by law. Qualifying for this particular race took place between October 1 and October 3 of 1992.
In 1984, Craig Romero and his wife, Pam, were married and moved into a home owned by the estate of his late father in Coteau which is located off Highway 88 and within District 22 (hereinafter referred to as the "Coteau home"). They lived in Coteau exclusively, with the exception of a period of time when the home flooded, until 1986 when his wife built a home with her separate funds on property owned by her parents who resided next door. This home is located on Highway 182 near Spanish Lake (hereinafter referred to as the "Spanish Lake home") and is outside of District 22.
Mr. Romero, his wife and three children moved into the Spanish Lake home, but Mr. Romero chose to live at the Coteau home the majority of his time. His wife and children (there are now six children) moved back to Coteau for weeks at a time during the major holidays each year and spent the summer months there. Mrs. Romero, who was an impressive witness, testified that she and the children spent one-half of their time at each residence, but her husband spent more time than they did at the Coteau home. Mr. Romero was in the cattle business, and he spent most of his time conducting his ranching business at the Coteau property. Other members of the Romero family spent the night at the estate home on occasion, and the utility bills were paid by his sister.
In the fall of 1990 and the spring of 1991, Mr. Romero began to develop the 15 acres of property which he will inherit on the Coteau estate which is located 200 yards from the Coteau home. He plowed this piece of property, elevated the home site, planted trees, took fences down, built electronic fences and a road leading to the home site. He testified that he made these improvements because he intended to ultimately build his dream home on this property. His wife corroborated his testimony. She stated that on their second date, he drove her to this piece of property located in Coteau and indicated to her that he would build his final home on this property.
In the summer of 1991, the Romeros were faced with the decision of whether or not they would build the home in Coteau or add on to the Spanish Lake home. Due to the increase in the size of the Romero family from three children to six children, Mrs. Romero felt that the 1300 square foot Spanish Lake home needed an addition. Mrs. Romero's parents, who were aging, were putting pressure on her to stay in the Spanish Lake home in order for her and the children to be close to them. Mr. Romero was against adding on to the Spanish Lake home because he spent so much time and money preparing the Coteau property to enable his family to build a home on it. Mr. and Mrs. Romero argued during the summer about this, but at the end of the summer Mr. Romero decided to put his own plans on hold for the time being in order to accommodate his wife's desire to respect her parents' wishes. Mr. Romero continued to spend most nights at the Coteau home and would sleep at the Spanish Lake home mainly on weekends and occasionally on a week night.
One of the requirements for qualification as a candidate for state senate is domicile. The candidate must have been actually domiciled for the preceding year in the legislative district from which he seeks election. Louisiana Constitution Article 3 Section 4(A). This is the issue before the Court. Was Craig Romero domiciled in District 22 for a period of one year preceding his qualification?
The jurisprudence reflects that the term "residence" is not to be confused with the term "domicile". The general definition of domicile is contained in LSA-C.C. Article 38 which states as follows:
"The domicile of each citizen is in the parish wherein he has his principle establishment.

*983 "The principal establishment is that in which he makes his habitual residence; if he resides alternatively in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, anyone of the said places where he resides may be considered as his principle establishment at the option of the persons whose interests are thereby affected." (Emphasis added.)
The proof of the intended domicile shall depend upon the circumstances. LSA-C.C. Article 43.
A person can only have one "domicile", but may have more than one residence.
Various indicia have been set forth to prove, by a totality of the circumstances, whether an individual has established a "bona fide residence". Among these are where the person is registered to vote, where his motor vehicles are registered, where he maintains bank accounts and receives mail, where he leases or owns property, where he contracts and transacts business affairs and whether the person has been nominated or is serving in various political offices at the address in question. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3d Cir.1979) held that where a person spends the greater portion of both his economic activity as well as his non-working time are factors that should be given weight in the determination of a residence or domicile. There must exist a sufficient quantity and quality relationship with the particular place. These circumstances are a factual determination to be made by the Trial Court in light of all relevant supporting evidence.
Domicile directs its focus to a citizen's principle domestic establishment.
The evidence which was introduced at trial shows that in all of the elections previous to the election of October 3, 1992, Mr. Romero voted in precincts which were outside of the Coteau home area. On July 15, 1992, Mr. Romero transferred his registration to his Coteau address. Mr. Romero had three mailing addresses which were as follows: (1) The Spanish Lake address, (2) The Coteau address and (3) The post office box in New Iberia. Mrs. Romero's vehicle, which was registered in her name, contains the Spanish Lake address. Mr. Romero's driver's license contain the Coteau address. His income tax returns bore the post office box in New Iberia.
A Louisiana citizen may legally maintain as many residences as he wishes and as his means will allow. He cannot legally register and qualify as an elector in more than one precinct, but the choice is his. Miller v. Poimboeuf, 514 So.2d 484 (La.App. 3d Cir.1987).
A fair evaluation of the evidence leads to a preponderance establishing that Mr. Romero was actually domiciled in Coteau which was within District 22 for one year preceding his qualifying as a candidate for the state senate race.
There was testimony from a newspaper reporter that Mr. Romero made the statement that he had not moved to Coteau until November of 1991. Romero listed the Spanish Lake address as his domicile on the qualifying form which he presented at the time he qualified for the parish president election on July 17, 1987. Mayor Bodin testified that in a conversation that he had with Mr. Romero and David Groner, it was his understanding that Mr. Romero did not think that he had a domicile problem because he was domiciled at Coteau. David Groner, who is a candidate for the state senate race as well, testified that at this same meeting with the Mayor and Mr. Romero, Mr. Romero stated that he may have a problem with qualification. The evidence offered by the contestant may cast some suspicion as to Romero's Coteau domicile but must yield to the preponderance of the evidence provided by the credible testimony of Romero and his wife as to where his domicile is located.
The determination of actual domicile is dependent upon the facts in each particular case. The burden of proving a lack of domicile is upon the contestant. The contestant has failed to meet this burden.
It is a well established legal principle that the laws governing the conduct of elections should be liberally interpreted so *984 as to promote rather than defeat candidacy. "Any doubt should be resolved in favor of permitting a candidate to run for public office. After all, he still has to face the voters who will, and should, exercise the final judgment on his candidacy." Slocum, supra. There was no evidence whatsoever to contradict Mr. Romero and his wife about his domicile at the Coteau location.
Considering the applicable law and the jurisprudence interpreting and applying that law, it is the opinion of this Court that the evidence is established that Romero's domicile is located in Coteau, which is included within District 22. He is therefore eligible to run for the office of state senator in District 22.
Costs to be paid by plaintiff.
Lafayette, Louisiana, this 22nd day of October, 1992.
 /s/Lucien C. Bertrand, Jr.
 LUCIEN C. BERTRAND, JR.
District Judge