709 So.2d 269 (1998)
Michael HERPIN, Plaintiff-Appellee,
v.
Cloris J. BOUDREAUX, et al., Defendant-Appellant.
No. 98-306.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1998.
Writ Denied March 11, 1998.
James Isaac Funderburk, Abbeville, for Michael Herpin.
Wade Anthony Mouton, Kaplan, for Cloris J. Boudreaux, et al.
Angie Rogers Laplace, Baton Rouge, for State.
Before SAUNDERS, SULLIVAN and PICKETT, JJ.
SULLIVAN, Judge.
In this action objecting to candidacy, defendant Cloris J. Boudreaux, appeals a district court decision that he did not meet the qualifications of actual residence and domicile as required by law, and was therefore disqualified as a candidate in the primary election for the office of Mayor for the City of Kaplan. The trial court also ruled that La. R.S. 18:101(A) and (B) as amended by Act 139 of Louisiana Legislature 1997 Regular Session was constitutional. For the reasons assigned below, we affirm the trial court's decision.
The first issue to be addressed by this appeal is whether Mr. Boudreaux was domiciled and actually residing for at least the preceding year within the corporate limits of the City of Kaplan. The qualifying requirements for the Office of Mayor are found in La.R.S. 33:384 which states as follows:
The Mayor shall be an elector of the municipality, who at the time of qualification as a candidate for the Office of Mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
In Blackwell v. Kershenstine, 97-210 (La. App. 3 Cir. 2-27-97); 690 So.2d 247, writ denied, 97-0545 (La.3/14/97); 689 So.2d 1390, this court set out the general standards of review in elections suits as follows:
The standard by which we review lower court decisions demands great deference to the trier of fact's findings when, as here, such findings are based on determinations regarding the credibility of witnesses. See Bradley v. Theus, 28714 (La. App. 2 Cir. 2/20/96); 668 So.2d 1304, writ denied, 96-0469 (La.2/26/96); 668 So.2d *270 355. As the Second Circuit stated in Bradley, supra:
[690 So.2d at] *249 ... Only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Gardner v. McDonald, 27,303 (La.App. 2 Cir. 08/23/95), 660 So.2d 107.
[2] [3] On the other hand, the plaintiff in an election matter has the burden of proof by a preponderance of the evidence. Autin v. Terrebonne, 612 So.2d 107 (La. App. 1 Cir.1992). Also, election laws should be liberally construed so as to promote rather than defeat candidacy. Pattan v. Fields, 95-1936 (La.App. 1 Cir. 9/26/95); 669 So.2d 1233. This means that doubts as to the qualification of a candidate should be resolved in favor of permitting the candidate to run for public office. Pattan v. Fields, supra; Arnold v. Hughes, 621 So.2d 1139 (La.App. 1 Cir. 1993).
In order to be qualified as a candidate for the Office of Mayor, Mr. Broussard had to be an elector of the City of Kaplan who, at the time of qualification, had been domiciled and actually residing for at least the immediately preceding year in the municipality. See La. R.S. 33:384. In Bradley v. Theus, 28,714 (La.App. 2 Cir. 2/20/96), 668 So.2d 1304, the Second Circuit explained the legal requirement of domicile and actual residence as follows:
In order to be qualified as a candidate for the office of mayor, Mr. Theus had to be an elector of the municipality of Monroe who, at the time of qualification, had been domiciled and actually residing for at least the immediately preceding year in the municipality of Monroe. La.R.S. 33:384. Perhaps more than any other single fact, Mr. Theus's change of voter registration in May of 1995 to an address outside the city of Monroe, strikes a mortal blow to his legal arguments, despite a change back to Monroe in January 1996. The legal requirement of domicile and actual residence is at least as strong as the constitutional requirement that a member of the legislature be "actually domiciled" for the preceding year in the legislative district from which he seeks election. See La. Const. Art. 3, § 4.
With regard to this latter requirement, we concurred in Davis v. English, 28,251 (La.App.2d Cir. 09/22/95), 660 So.2d 576, with the view that the word "actually" serves to emphasize the residence aspect of domicile, and that the apparent intent of the delegates to the Constitutional Convention was to limit candidacy for political office to citizens who actually live in the district they aspire to represent. We agreed that the constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area and were not truly representative of the district in which they sought election. We draw the same conclusion here, especially considering that the qualifications for mayor were amended in 1993 when the words "shall have been domiciled" were changed to "shall have been domiciled and actually resided."
In Pattan v. Fields, 95-1936 (La.App. 1 Cir. 9/26/95), 669 So.2d 1233, the First Circuit explained the difference between residence and domicile as follows:

DOMICILE
Fields contends the trial court erred in finding he was not actually domiciled for the preceding year in State Senatorial District No. 15.
Generally, the laws governing the conduct of elections should be liberally construed so as to promote rather than defeat a candidacy. Arnold v. Hughes, 621 So.2d 1139, 1140 (La.App. 1st Cir.1993). Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Arnold v. Hughes, 621 So.2d at 1141.
LSA-Const. Article 3, Section 4, requires that a candidate for the legislature must have been "actually domiciled for the preceding year" in the district from *271 which he or she seeks election. The phrase "actually domiciled" as used in the constitution requires that one holding legislative office have a real rather than fictitious domicile in the area represented. Messer v. London, 438 So.2d 546, 547 (La. 1983).
Residence and domicile are not synonymous, and a person can have several residences, but only one domicile. Messer v. London, 438 So.2d at 547; Autin v. Terrebonne, 612 So.2d 107, 108 (La.App. 1st Cir.1992). A person may maintain more than one residence, and the fact that one is maintained for political purposes does not itself prevent residence from being actual and bona fide. Autin v. Terrebonne, 612 So.2d at 108.
Domicile is defined in LSA-C.C. art. 38 as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
Domicile is a person's principal domestic establishment, as [95 1936 La. App. 1 Cir. 7] contrasted to a business establishment. Messer v. London, 438 So.2d at 547; Broussard v. Romero, 607 So.2d 979, 980 (La.App. 3rd Cir.1992). In other words, a person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. LSA-C.C.P. art. 1234; Veillon v. Veillon, 517 So.2d 936, 940 (La.App. 3rd Cir.), writ denied, 519 So.2d 105 [669 So.2d at] *1238 (La.1987). Further, a person's domicile of origin continues until another is acquired. Blackwell v. Blackwell, 606 So.2d 1355, 1358 (La.App. 2nd Cir.1992).
LSA-C.C. art. 41 addresses a change of domicile and provides as follows:
A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.

See Succession of Caprito, 468 So.2d 561, 563 (La.1985).
A change in domicile requires the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile. Blackwell v. Blackwell, 606 So.2d at 1358.
Proof of intent to change domicile is governed by LSA-C.C. arts. 42 and 43. Intention to change domicile is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and registered by the recorder. LSA-C.C. art. 42. In case this declaration is not made, the proof of this intention shall depend upon circumstances. LSA-C.C. art. 43. In other words, an intention to change domicile may be proved by an express declaration in writing registered in the parishes of the old and new residences or, in the absence of a declaration, by the circumstances surrounding the residence. Autin v. Terrebonne, 612 So.2d at 108.
In establishing domicile, intent is based on the actual state of facts and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842, 844 (La. App. 1st Cir.1992). The circumstances [95 1936 La.App. 1 Cir. 8] indicating establishment of a domicile include where a person sleeps, takes his meals, has established his household, and surrounds himself with family and the comforts of domestic life. Sheets v. Sheets, 612 So.2d at 844. Further, a change in domicile for the purposes of qualifying for public office occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. LSA-C.C. arts. 42 and 43; Messer v. London, 438 So.2d at 547; Autin v. Terrebonne, 612 So.2d at 108.

*272 There is a presumption against change of domicile. Autin v. Terrebonne, 612 So.2d at 108; Blackwell v. Blackwell, 606 So.2d at 1358; Chandler v. Brock, 510 So.2d 778, 779 (La.App. 2nd Cir.1987). However, when a person holds public office, the law presumes his domicile continues in the place where he exercises his public functions. Messer v. London, 438 So.2d at 547.
The burden of proof is on the party contesting candidacy. Messer v. London, 438 So.2d at 548; Slocum v. De-Witt, 374 So.2d 755, 758 (La.App. 3rd Cir.), writ denied, 375 So.2d 1182 (La.1979). Moreover, in a suit objecting to a candidacy on the ground the defendant was unqualified to be a candidate because of not having been actually domiciled in the district for one full year preceding the time for qualification, the burden of proof is on the contestant. Autin v. Terrebonne, 612 So.2d at 108; Blackwell v. Blackwell, 606 So.2d at 1358. The question of domicile is one of intention as well as fact, and where it appears a domicile has been acquired in another district, the party seeking to show it has been changed to a new district must overcome the legal presumption it has not been changed by positive and satisfactory proof of the establishment of a domicile as a matter of fact with the intention of remaining in the new district and of abandoning the former domicile. Succession of Caprito, 468 So.2d at 563.
[24][25] Domicile is an issue of fact to be determined on a case-by-case inquiry. Succession of Barnes, 490 So.2d 630, 631 (La.App. 2nd Cir.1986); Eagle v. Eagle, 477 So.2d 1293, 1294 (La.App. 3rd Cir. 1985); Calix v. Souza, 467 So.2d 1369, 1370 (La.App. 5th Cir.1985). [95 1936 La.App. 1 Cir. 9] As in any case, the factual findings of the trial court will not be disturbed on appeal unless clearly wrong. Autin v. Terrebonne, 612 So.2d at 108. See Dumas v. Jetson, 462 So.2d 266, 268 (La.App. 1st Cir.1984); Chandler v. Brock, 510 So.2d at 779.
In the present case, Mr. Boudreaux owns two homes. He built his first home located at 16635 W. Highway 700 in January 1991. The home is a three bedroom brick home with approximately 2600 square feet of living area. The home cost him approximately $50,000 to build in 1991. The land upon which the home is located contained approximately 14.85 acres. Last year Mr. Boudreaux purchased additional acreage. This home is located outside the corporate limits of the City of Kaplan. The home is approximately three miles from town.
In December 1994, Mr. Boudreaux purchased a two bedroom wooden frame house located at 1000 Jackson Avenue within the corporate limits of Kaplan. The home cost him $12,000 and he spent an additional $8000 or $9000 in improvements. The house contains approximately 700 square feet of living area.
Cloris Boudreaux testified to the following: Approximately one and a half years ago he decided to change his domicile from the country home to the home at 1000 Jackson Avenue. His reasons were for the convenience of his and his wife's jobs and of his family due to the children's activities in town. He also had a desire to run for mayor. The home has a telephone, refrigerator, stove, a jam box, a cassette player, a radio, a freezer, a vacuum cleaner, a microwave, and a television set. The family has lived in this house the majority of time during the past year. He and his wife used the house for breaks from their work during the day. The daily newspaper is delivered at the house. His bank account and his truck registration reflect the 1000 Jackson Avenue address. His wife and he are also registered to vote at this address. Since the house only contains two bedrooms, the thirteen year old girl and the fifteen year old son sleep in the same bedroom. His utility bill for March of last year at the 1000 Jackson Avenue home was $19.77. His last month's utility bill was $28.44 for the house. On January 14, 1997, Mr. Boudreaux sent a letter to the Secretary of State to determine what requirements were necessary for him to establish a legal domicile in order to run for the mayor of the City of Kaplan. He stated in his letter that prior to the one year period to qualify for the position of the mayor, that he would sleep at the house at 1000 N. Jackson Avenue at least *273 two nights a week or more or whatever the law requires in order to establish his domicile. Mr. Boudreaux did not file an affidavit in the clerk's office of his intent to change domicile. The utility bill at the home at 16635 W. Highway 700 ran him approximately $90.00.
Three of the defendant's neighbors testified that Mr. Boudreaux did live across the street and had been a neighbor for the last two or three years. One of the witnesses testified that their last utility bill was $133.00. Another testified that his utility bill was $56.00 last month but that he had not stayed at home that much, and that last winter it was much higher. The third neighbor testified that their last utility bill was $90.00 and that he only runs one burner on the heater on a low setting and at night he runs the central heater as low as he can at 64 degrees.
Brenda Suire, Chief Deputy Assessor for Vermilion Parish, testified that her office sent Mr. Boudreaux an inquiry after he purchased the house at 1000 North Jackson. The document asked whether he was going to live in the house at North Jackson and the notation from the assessor's office was that Mrs. Boudreaux informed them that the house was to be used as a camp. The notation was made on April 25, 1995.
Based on the testimony at trial and the exhibits in evidence, the trial court found the defendant did not meet the qualifications for the office of the Mayor of Kaplan and that he did not actually reside at 1000 North Jackson Avenue. The trial court found that Mr. Boudreaux's actual residence was at the home at 16635 W. Highway 700.
Based on the record in its entirety, we find that the trial court was not clearly wrong or manifestly erroneous in determining that Mr. Boudreaux was domiciled and actually residing at the 16635 W. Highway 700 residence. This court finds it difficult that a family of four can spend the majority of their time, including most nights in a home, and use very limited utilities although the home contains an electric stove, electric refrigerator, freezer, television, and other electrical items. The utility bills easily infer that the Boudreauxs were not actually residing at the 1000 North Jackson Avenue address the majority of the time. The testimony of Mr. Boudreaux and the January 14, 1997 letter show that Mr. Boudreaux's main intent was to qualify that residence as his political domicile. Domicile is a person's principal domestic establishment wherein he makes his habitual residence and it essentially consists of residence and intent to remain in place. See Pattan v. Fields, supra. It is clear that when Mr. Boudreaux purchased the home at 1000 North Jackson Avenue, his intent was not to establish it as his domicile, but as a camp. Mr. Boudreaux stated that his intent to change domicile occurred approximately a year and a half ago. Since there is no declaration to change domicile, proof of this intention depends upon the circumstances. See La.Code Civ.P. art 43. There is a presumption against change of domicile. See Pattan v. Fields, supra. In the present case we find that the trial court was not clearly wrong in finding that the defendant's domicile had not changed. Since we have found that Mr. Boudreaux is not domiciled and actually residing in the municipality of Kaplan, we need not determine whether Act 139 of the Louisiana Legislature 1997 Regular Session is applicable to this case. For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, Judge, dissenting for the following reasons.
A person may have more than one residence, but only one domicile. Domicile is a question of volition. A person may choose which of his multiple residences will be his domicile. In this case, the plaintiff had two residences, but chose to be domiciled in Kaplan. The uncontroverted testimony revealed Mr. Boudreaux actually resided and intended to be domiciled at the 1000 N. Jackson Avenue residence a majority of the time within the last year. Therefore, the only issue is whether the amendment to La.R.S. 18:101 is constitutional. La.R.S. 18:101B cast an unconstitutional tax on the right of the plaintiff *274 to select his domicile, and thus the place at which he may vote and run for office. A person should not have to waive his homestead exemption in order to exercise his choice of domicile. Further, La.R.S. 18:101B does not provide notice or a procedure similar to La.R.S. 18:193 to have qualified voters who registered prior to the effective date of the statute in an appropriate precinct to re-register in the precinct where this homestead exemption is claimed. Accordingly, I would reverse the trial court and declare La.R.S. 18:101B unconstitutional on two distinct bases. First it is an unconstitutional burden on the right to vote and secondly, it fails to afford due process.