STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-235

BILLY JOE HARRINGTON, IN HIS OFFICIAL CAPACITY
AS DISTRICT ATTORNEY FOR THE 10TH JUDICIAL DISTRICT
COURT, NATCHITOCHES, LOUISIANA

VERSUS

MOZELLA JEANETTER BELL

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-90856
HONORABLE DESIREE D. DYESS, DISTRICT JUDGE

**********

JONATHAN W. PERRY

JUDGE

**********

Court composed of John E. Conery, Candyce J. Perret, and Jonathan W. Perry, Judges.

AFFIRMED AS AMENDED.

T. Taylor Townsend
T. Taylor Townsend, LLC
P.O. Box 784
Natchitoches, LA 71458
COUNSEL FOR DEFENDANT APPELLANT:
    Mozella Jeanetter Bell

Steven P. Mansour
Assistant District Attorney
Billy Joe Harrington
District Attorney, Natchitoches Parish
P.O. Box 838
Natchitoches, LA 71458
COUNSEL FOR PLAINTIFF APPELLEE:
     Billy Joe Harrington, in His Official Capacity
     As District Attorney for the 10th Judicial District,
     Parish of Natchitoches, State of Louisiana

**PERRY, JUDGE.**

Mozella Jeanetter Bell (Ms. Bell) appeals the trial court's judgment in favor of Billy Joe Harrington, in his official capacity as District Attorney for the Tenth Judicial District, Natchitoches Parish, Louisiana (DA). Pursuant to the DA's petition for a declaration of vacancy of the office of mayor of Campti under La.R.S. 18:671–675, the trial court found that Ms. Bell did not meet, and never had met, the continuing dual obligation to be domiciled and actually reside in the town of Campti, Louisiana. Finding no error or manifest error in the trial court's judgment declaring the office of mayor vacant, we amend the judgment to delete a speculative finding, and affirm the judgment as amended.

**I.**

**ISSUE**

We must decide whether the trial court manifestly erred in finding that Ms. Bell did not meet the continuing dual obligation of the mayor to be domiciled and actually reside in the town of Campti, or whether the residency defect was curable in February 2019 when Ms. Bell established a residence in Campti.

**II.**

**FACTS AND PROCEDURAL HISTORY**

Ms. Bell, approximately forty years of age, was elected as mayor of Campti on November 6, 2018. Ms. Bell obtained 161 votes while her opponent, Roland Smith, garnered 126 votes. Ms. Bell took the oath of office on December 27, 2018. When Ms. Bell had earlier filed her notice of candidacy in July 2018, she designated her domicile as 3365 Highway 480, Campti, Louisiana. The legal

description by the Natchitoches Parish Assessor states that this property is about one-half mile west of Campti. Ms. Bell testified at trial that she had lived at the Highway 480 address, which is heir property, from the sixth grade forward; that she knew it was outside the municipality when she filed her notice of candidacy; and that she had never resided in Campti, until she rented a house there in February 2019 for political reasons. Ms. Bell further testified that in the election of November 6, 2018, she did not vote for herself, as she was not on the ballot where she was registered to vote, which was in Clarence, Louisiana.

On January 2, 2019, a registered voter in Campti, Tarlisha Hudson, filed a complaint with the DA, asserting that Ms. Bell did not live at the Highway 480 address and was not qualified for the office of mayor under the Lawrason Act. She requested that the office be declared vacant and that a new election be held. At trial in March 2019, Ms. Hudson testified that she had resided at the same address in Campti for ten years and passed by the Highway 480 address four times a day (to and from work and to and from home for lunch), five days a week, and no one lived in the house. She said the house was boarded up; the gate was locked; green grass grew over the driveway; and an old car that did not appear operable had sat in the yard for years. Ms. Hudson stated that just in the last two weeks, she had seen Ms. Bell there with the gate open.

On January 7, 2019, a registered voter in Campti for eighteen years, CyNita Nash, filed a second complaint with the DA. Ms. Nash asserted that Ms. Bell had used 3365 Highway 480 as her address in qualifying for mayor; that no one had lived there for several years; and that the address was outside the city limits. Ms. Nash added that Campti did not have a charter and was governed by the Lawrason Act. At the March 2019 trial, Ms. Nash said she passed by the property

2

at least twice a month; plywood was on the right side; the weeds were up; the old car had not moved in five to ten years; there was no one entering or exiting the house; there were no pets and no signs of people living there. Ms. Nash said that she was one of the last candidates to qualify for the office of Councilman for the town of Campti and saw Ms. Bell's name. Ms. Nash further stated that she had complained at the registrar's office but was told that Ms. Bell was qualified. After the election, Ms. Nash contacted the ethics board in Baton Rouge and was given the proper procedure to follow at that time in filing her complaint.

Pursuant to La.R.S. 18:671–675, following complaints of the registered voters, the DA investigated the residency issue in January 2019 and determined that Ms. Bell was not in compliance with the requirements of the office of mayor under La.R.S. 18:581(3) and La.R.S. 33:384. According to the procedural requirements of La.R.S. 18:671–675, the DA issued an opinion with written reasons, published same in *The Natchitoches Times* on January 17, 2019, and filed a petition on January 22, 2019, to declare the mayoral office vacant. The hearing was set for February 15, 2019. The DA's research indicated that Ms. Bell's address was 201 Ruby Road in Coushatta, Louisiana, and he requested service at that address.

On February 4, 2019, Ms. Bell executed an affidavit, declaring that her domicile was now 275 Barnum Street in Campti, Louisiana, and attached various documents in support. On February 13, 2019, she filed an exception of no cause of action, asserting that no challenge to her candidacy or her election was made within the time periods required under La.R.S. 18:1405. It further asserted that Ms. Bell had established domicile and residency inside the town limits and was in compliance with La.R.S. 18:672. The exception then stated, "[w]ithout conceding whether there was compliance at the time of the filing of the petition," no statute or caselaw fixes

3

whether the time for meeting the residency requirement was the time of taking office, the time of the DA's investigation, or the time of the vacancy hearing. This exception was subsequently withdrawn before the hearing.

Ms. Bell did not accept service of the petition until February 14, 2019, when she executed an affidavit for that purpose. On that date she also filed a joint motion to continue the February 15 hearing date to February 21, 2019. On February 21, the hearing was reset for February 25, 2019. On February 25, the hearing was reset to March 6, 2019.

On February 25, 2019, Ms. Bell filed her answer, which concluded with a brief exception of prescription, asserting that the time for setting aside the election had prescribed under La.R.S. 33:146.[1]

At the hearing on March 6, 2019, the DA presented the testimony of Tarlisha Hudson and CyNita Nash and entered the evidence of his investigation, which included photographs of the designated domicile on Highway 480 from July 2018 to February 2019. Ms. Bell did not call witnesses but testified on her own behalf, and her attorney presented evidence of her February 2019 residence on Barnum Street in Campti. The trial court took the matter under advisement.

On March 14, 2019, the trial court entered judgment in favor of the DA, finding that Ms. Bell did not meet the continuing, dual residency and domicile requirements of her office. On March 18, 2019, in accordance with the provisions

---

[1] The trial court judgment denied Ms. Bell's peremptory exception of prescription, stating that La.R.S. 33:146 was not applicable as the DA's action did not contest the integrity or legitimacy of the election, but involved whether circumstances exist for a declaration of vacancy under La.R.S. 18:581(3). Ms. Bell has not raised the trial court's denial of her peremptory exception of prescription in this appeal.

of La.R.S. 18:684(B), Ms. Bell timely filed a suspensive appeal of the trial court judgment.

## III.

## <u>STANDARD OF REVIEW</u>

The trial court's factual findings regarding domicile are subject to a manifest error standard of review. *Herpin v. Boudreaux*, 98-306 (La.App. 3 Cir. 3/5/98), 709 So.2d 269, *writ denied*, 98-0578 (La. 3/11/98), 712 So.2d 859. This is particularly true where determinations regarding the credibility of witnesses are involved, as "[o]nly the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* at 270. Questions of law are reviewed de novo. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36.

## IV.

## <u>LAW AND DISCUSSION</u>

*The Lawrason Act*

On February 25, 2019, Ms. Bell and the DA filed a joint stipulation which stated that the town of Campti is a Lawrason Act jurisdiction, governed by La.R.S. 33:321–463. Louisiana Revised Statutes 33:321, entitled "Municipalities governed by mayor-board of aldermen form of government," states: "All municipalities shall be governed by the provisions of this Part except those municipalities governed by a special legislative charter or a home rule charter or plan of government adopted pursuant to Article VI of the Constitution of

5

Louisiana."[2] Pursuant to La.R.S. 33:384 (emphasis added): "The mayor *shall be an elector* of the municipality *who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.*"

The DA filed suit under La.R.S. 18:671–675. Louisiana Revised Statutes 18:672, entitled "Filing of complaint," states (emphasis added):

> When any voter lawfully registered in the district or geographical area from which an officeholder has been elected, or from which an officeholder has been appointed or otherwise selected to hold an office, has reason to believe that the officeholder *no longer meets the residence or domicile requirements of that office*, the voter may make a written complaint of that fact to the proper official.

***Designated Domicile and Elector Status***

By her own admission, Ms. Bell was not an elector of the municipality of Campti at the time she qualified as a candidate on July 19, 2018; nor at the time of the election on November 6, 2018; nor at the time she took the oath of office on December 27, 2018; nor at the time of the two complaints on January 2 and 7, 2019; nor at the time of the DA's January investigation, or his published opinion on January 17, 2019, or the filing of his petition for vacancy on January 22, 2019. Thus, at all relevant times, she was not an elector or resident of the municipality of Campti.

The trial court found that Ms. Bell was in violation of La.R.S. 18:581(3), which states (emphasis added):

> "Vacancy" occurs in an elective office when the office is or will be unoccupied by reason of the death of

---

[2] Under Historical Notes, La.R.S. 33:321 states that the Lawrason Act was passed in 1898 to set forth "a general legislative charter for all municipalities created after its effective date as well as for those created prior to its effective date which chose to accept its provisions."

the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or *when the person elected to or holding the office no longer meets the residence or domicile requirements of that office*, any declaration of retention of domicile to the contrary notwithstanding, or when an office is created due to a reclassification of a municipality.

The trial court found that if Ms. Bell had never lived in the town of Campti, then declaring a vacancy of the office of mayor was appropriate because she surely "no longer meets the residence or domicile requirements of that office." We agree.

Ms. Bell's position at trial was that she could establish a residence in Campti if/after she won the election. On February 25, 2019, she and the DA stipulated to various documents that she had obtained in order to establish a residence at 275 Barnum Street, inside the municipality of Campti, in February 2019. A review of the documents reveals a six-month lease for the Barnum Street property for $450.00 a month dated January 24, 2019; however, as pointed out by the trial court, it does not bear Ms. Bell's signature or even her printed name on any part thereof. Other documents bearing the Barnum Street address include a driver's license for Ms. Bell dated January 31, 2019; water service dated February 1, 2019; gas service to begin on February 7, 2019; a bank statement dated February 13, 2019; a vehicle registration with a hole-punch covering the month, but showing the day as the 4th and the year as 2019; and a voter registration confirmed on February 7, 2019.

Based upon the dates of the foregoing proof of residency, and Ms. Bell's own testimony, Ms. Bell was not domiciled in, nor did she actually reside in

7

the municipality of Campti until February 2019. The trial court noted this fact and opined on Ms. Bell's statement at trial that she thought she could move into Campti after she won the election. The court noted that, having won the election on November 6, 2018, Ms. Bell still did not move into Campti until after the January 22, 2019 suit was filed against her. The trial court made other credibility determinations as it discussed the testimony of Ms. Bell regarding the Highway 480 property that Ms. Bell used as her designated residence and domicile when she qualified to run for mayor in 2018. While the trial court found that Ms. Bell's testimony regarding the residence was "largely irrelevant" because it was outside the municipality of Campti, the trial court also found that the testimony was "also largely untruthful."

More specifically, Ms. Bell testified that, while she lived at 3365 Highway 480, she had traveled considerably, doing numerous internships after college in various states around the country. Then, in 2017, she was her mother's caretaker, staying with her at MD Anderson, before her mother died of cancer. She testified that in 2018, she was her brother's caretaker before he died of kidney failure in the VA hospital. Ms. Bell testified that she stayed with relatives during these times and obtained items for her brother from his home in Coushatta. She explained the extremely low electric bills in evidence for the Highway 480 residence, stating that her mother did not like air conditioning, so she used fans. She said only one window was boarded up, and that was due to a break-in. She explained that there was no water service because she had a well, and she produced a receipt for well repair.

### The Trial Court's Findings on Designated Domicile

The trial court accurately described the evidence, articulating:

8

At most, this address was nothing more than an emotional tether to her childhood and to her family and at no time since December of 2017, at least, did she reside or intend to reside there. Photographs of the subject house taken in January of 2019, a time during which Mayor Bell claimed she was residing in the house, show a boarded-up and over-grown homestead that does not look to be inhabited by anyone. Besides the visually questionable soundness of the structure, most telling was the absence of any foot and automobile traffic on the unpaved overgrown grassy tract between the highway and the gate, beyond the gate, and to the "garage" or front door. Further, the utility bills from December of 2017 to January of 2019, totaling $193.47 and averaging $12.89 per month, suggests no one was living in the house, no matter how little electricity Mayor Bell claims she requires. This court finds it difficult to believe that for the "90 to 120 days a year" she claims to live at the house, she chooses to use fans instead of the air conditioner. It is also noted that during this 14-month period, only two payments were made resulting in two disconnects for non-payment.

The credible testimony of one of the two complaining witnesses, Tarlisha Hudson, supports this finding. Besides noting these same physical conditions of the house, she stated that she passes by the subject house up to four times a day and has never seen anyone at that house for years.

It is the court's finding that all times relevant, the subject house has been unused as a residence by anyone, and that Mayor Bell admittedly used that address as a Campti address for the purposes of running for mayor. It is the court's belief that had the instant petition not been filed, she would still be living in Red River [P]arish or staying in Shreveport with no intention to re-establish her domicile within the town limits of Campti.

The trial court then discussed what it termed as the *res nova* issue of whether an official can cure the lack of residency and domicile post-election. The trial court determined, under the facts of this case, that one cannot cure the residency defect three months after the election and after suit was filed. After quoting various

9

jurisdictions from other states regarding the purpose of residency statutes, the trial

court eloquently opined as follows:

> From a more local-government perspective as the subject mayoralty, these requirements keep "frivolous" candidates off the ballot and they work to ensure geographic representation. The requirement that a person has to live in a certain municipality for a set period of time and during their term of office works to better ensure that the municipality's needs receive adequate representation and its character preserved.
>
> Here, the residents of Campti voted for Ms. Bell to be the leader of their town, to live among them, to witness their concerns and, above all, to be accessible, something the residents of the Town of Campti have not had in a mayor since Ms. Bell was sworn in. The residents of Campti voted for a mayor, not a proxy from a neighboring parish. To allow for an official to "cure" the lack of residency requirement by moving post-election into the proper geographic jurisdiction of the office, and perform the perfunctory hoop-jumping to claim legitimacy of residence and domicile, disregards, and thus undermines, these statutory protections and impermissibly rewards the less-than-forthright official by keeping the authority and remuneration that the office provides. To legitimate this practice would morph our practical democracy in a mere facade of one as geo-political movements could be orchestrated and accomplished by a remote few independent of the will of their respective constituencies.

In conclusion, the trial court stated:

> It must be remembered that Mayor Bell did not attempt to become a resident within the municipal limits of Campti until after she was sued. Had she "cured" her residency defects before that time, such a material fact could tip the scale on this issue. Here, she did not do so. It is this court's opinion that but for the two complainants, Mayor Bell would have resided indefinitely in Red River Parish or with family in Shreveport. Additionally, and most significant to this analysis, Mayor Bell was *never a resident and domiciliary* within the municipal limits of Campti thus *failing* to qualify as a bona fide candidate, *ab initio*. Therefore, since the purported "cure" would have never occurred without a judicial demand prompted by a whistle-blowing voter, it is not unreasonable that the date

10

> of that judicial demand, January 22, 2019, serve[] as the deciding benchmark for the purposes of the vacancy statute in this instance.

### *Curability of Residency Defect*

While we agree with the trial court's finding that Ms. Bell was never a resident or domiciliary of Campti and thus failed to qualify as a bona fide candidate in the first place, we do not agree that she might have been able to cure the defect if she had moved into Campti at some time after the election and before suit was filed against her. None of the applicable statutes supply such a cure.

Residency and domicile are continuing requirements and can be challenged under La.R.S. 18:581(3) and La.R.S. 18:671–675 when the official no longer meets, which for all intents and purposes is synonymous with does not meet, the residency requirements of his/her office. The thrust of Ms. Bell's argument, however, is that an elected official *can cure* a residency and domiciliary defect, and, this cure can occur *after the petition for vacancy is filed*. We disagree.

Because Ms. Bell did not provide proof of residency at 275 Barnum Street in Campti until February 2019, she argues that, not only can the residency/domiciliary defect be cured, but also, it can be cured at any time up *until the office of mayor is judicially declared vacant*. We find this statement is self-serving in that Ms. Bell asserts that no statute sets the time for establishing residence. Nonetheless, she asks this court to set the time for establishing residency at the time of the judgment of vacancy, which in her case was March 14, 2019, *after* she had rented the Campti house in February. This we decline to do. The time of the March judgment in this case is over four months after the November 2018 election, eight

11

months after the July 2018 qualification notice, and a year and eight months after the date that residency is required under the governing statute.

Further, and of significant importance in this inquiry, the date of the judgment is an arbitrary date for meeting residency requirements that should have been met a year before qualifying because the date of judgment is dependent upon when suit is filed and how many delays and continuances are obtained during the procedure. In this case Ms. Bell established residency in Campti on February 1 after being sued on January 22, 2019, but she did not accept service of the suit until February 14, 2019, and she obtained three continuances of the hearing date. If the date of the judgment, which controls the actual vacancy, also controls the date for *first* meeting residency requirements, it would be possible for the elected official to stall the date for meeting residency requirements until a time that suits her, which cannot be the intent of the legislature who set tight time constrictions on the processes in the Election Code. Moreover, the vacancy statutes, which are painstakingly detailed, simply do not provide a cure, or a date for curing, a residency defect that has already occurred before the statutes are invoked.

While the trial court's judgment suggests that the date of the DA's petition against Ms. Bell, January 22, 2019, might be an appropriate benchmark for the date to require residency to be met in this case, such date appears nowhere in the governing statutes. Moreover, it is unnecessary to create a residency date when that date has already been created. The Election Code does not preclude other statutes, and in fact, La.R.S. 18:671 and 18:675 specifically include other procedures authorized by law for removing officers and declaring offices vacant.

The trial court found that Ms. Bell was in violation of La.R.S. 18:581(3), also found in the Election Code, which states (emphasis added):

12

"'Vacancy' occurs in an elective office . . . *when the person elected to or holding the office <u>no longer meets the residence or domicile requirements of that office</u>*[.]" Likewise, "vacancy, as used in th[e] Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason." La.Const. art. 10, § 28.

### *The Time for Meeting Residency Requirements is Fixed*

Ms. Bell did not meet the residency requirement when she qualified to run on July 19, 2018, because she had not resided or been domiciled in Campti for the preceding year, which is the time for meeting the residency requirements for candidates in the Election Code at La.R.S. 18:451.[3] It is true that no voter timely filed a challenge to Ms. Bell's qualifications as a *candidate* under La.R.S. 18:492 within seven days of the qualifying period under La.R.S. 18:493 and 18:1405. However, when Ms. Bell was elected as mayor on November 6, 2018, *as an elected official*, she was immediately in violation of La.R.S. 18:581(3) and La.R.S. 18:672, because she no longer met the residency requirements of her office and was subject to a declaration of vacancy under those statutes.

Moreover, Ms. Bell was in violation of La.R.S. 33:384 of the Lawrason Act, which <u>mandates</u> (emphasis added):  "The mayor *shall be an elector of the*

---

[3] See La.R.S. 18:451, entitled "Qualifications of candidates," which provides in pertinent part (emphasis added):

> A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. *Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office.  <u>In the event that the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary</u>.*

*municipality who at the time of qualification* as a candidate for the office of mayor *shall have been domiciled and actually resided for at least the immediately preceding year in the municipality*." While Ms. Bell argues that no statute or caselaw fixes the time for residency, La.R.S. 33:384 fixes the time for residency at one full year prior to filing the qualifying papers/notice of candidacy. Louisiana Revised Statutes 33:384 of the Lawrason Act is not in conflict with the Election Code, which establishes the same requirement in the candidacy section at La.R.S. 18:451; nor is it in conflict with the specific statutes under which the DA brought this action, La.R.S. 18:671–675.

As the trial court found, there are no Louisiana cases determining that an elected official can cure a residency and domicile defect. However, contrary to Ms. Bell's assertion, there is caselaw involving a city charter, not a Lawrason Act municipality, indicating that the defect *cannot* be cured. This court in *Lestage v. Harris*, 18-842 (La.App. 3 Cir. 11/8/18), 261 So.3d 12, *writ denied*, 18-1851 (La. 2/11/19), 263 So.3d 1151, recently decided that events occurring outside the residency parameters of the governing law under which an official is elected, involving language almost identical to that in the Lawrason Act, do not erase preexisting residency defects when a vacancy action is brought under La.R.S. 18:671–675.

In *Harris*, the defendant argued that issues of residency were really a collateral attack on candidacy, which could not be raised pursuant to La.R.S. 18:492 more than seven days after the qualifying period. But residency is precisely the issue supplying the cause of action for vacancy under La.R.S. 18:671–675. In *Harris*, this court found that the residency requirement of the city's charter "reaches back" to a year before the qualifying papers are filed to determine whether a sitting mayor

14

meets the requirements of his office. There, the mayoral candidate qualified to run on January 3, 2018, and was sworn into the office on July 2, 2018. In the previous year, on July 16, 2017, he had changed his homestead exemption back to an old home in the city, but the effort to change his domicile was less than a year before qualifying to run on January 3, 2018. This court found as follows:

> Mr. Harris contends that it was error for the trial court to consider any residency events that occurred before he was sworn into office on July 2, 2018. We disagree. Both sections of the city's charter address an "elected" official's dual requirements of being domiciled *and actually residing* in the city of DeRidder. Section 2-04(1) (emphasis added) *reaches back to a year before the qualifying papers were filed,* stating that the "council member *elected* at large[,]" not the candidate, "*shall have been legally domiciled and shall have actually resided for at least one (1) year immediately preceding the time ... for qualifying for office in an area which, at the time of qualification, is within the city*." While the DA's petition addresses Section 2-04(2), the *continuing obligation* of the council member *to be legally domiciled and to actually reside* in the city, the pleading has been expanded by the evidence, without objection, to include the violation of Section 2-04(1), as originally alleged by the complainant, Mr. Roberts. *See* La.Code Civ.P. art. 1154.

*Harris*, 261 So.3d at 19 (second and fourth emphasis added).

Similarly, in almost identical language, the Lawrason Act at La.R.S. 33:384 (emphasis added) states: "The mayor *shall be an elector* of the municipality *who at the time of qualification* as a candidate for the office of mayor *shall have been domiciled and actually resided for at least the immediately preceding year in the municipality*." Thus, the domicile and residency requirement for a sitting mayor under the Lawrason Act does not begin when he/she is elected, or later, when he/she is sworn in, and certainly not another month later after suit is filed against him/her. Rather it reaches back a full year *before* the filing of the qualification papers. While

*Harris*, which resulted in a declaration of vacancy, is partially distinguishable on the facts because the elected official in that case owned two homes, one inside and one outside the municipality, the governing language for the elected official is almost identical and supportive of a finding that the residency defect cannot be cured.

In asserting that the residency defect is curable, Ms. Bell argues in the negative, stating, "if the legislature had intended to make this defect not curable, it could have stated same in the statute, or it could have fixed the date of status and the fact that once the status is lost, it cannot be regained. No such legislation has been enacted[.]" Ms. Bell does not provide the court with an antecedent for her reference to "the statute"[4] and does not address the applicable statutes that clearly fix the time for meeting residency requirements.

Based upon our analysis, the date for meeting residency requirements is already established as one year prior to qualifying to run for office, pursuant to La.R.S. 33:384, which comports with the requirements in the Election Code at La.R.S. 18:451. If the legislature had wanted to fix the residency date, again, in the vacancy statutes, La.R.S. 18:581 and 18:671–675, other than "no longer meets," it could have done so. It is only reasonable that the legislature, in drafting the vacancy statutes, assumed that residency requirements had once been met prior to qualifying, and, if it wanted to make the residency requirement "curable" by a specific post-election date or event, it would have done so.

Our jurisprudence has always found that domicile and residence can be changed for political reasons, but the time to effect the change is a year before

---

[4] The Election Code at Title 18 of the Louisiana Revised Statutes occupies five volumes and is comprised of La.R.S. 18:1 through 18:1951.

16

qualifying, not after. For example, see *Cleveland v. Williams*, 49,664, p. 7 (La.App. 2 Cir. 9/8/14), 148 So.3d 229, 233: "A person may change his domicile in order to qualify for a political office so long as that change is genuine and a change in fact, not a fiction to avoid the domicile requirement for qualification." Thus, if Ms. Bell actually and continually resides at 275 Barnum Street in Campti, having officially declared that as her domicile on February 4, 2019, she will be qualified *to run* for a municipal office in Campti after February 4, 2020, even though she changed her domicile in 2019 for political reasons.

In addition to the statutes discussed above, the DA's appellee brief further points out that Ms. Bell's qualifying, her election, and her designation as an elected mayor are an absolute nullity under La.Civ.Code. art. 7, entitled "Laws for the preservation of the public interest," which states: "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." The nullity argument is persuasive since Ms. Bell was a resident and elector of Clarence, not Campti, and thus was not a bona fide candidate when she filed qualification papers. This analysis is also supportive of a finding that the defect in residency cannot be cured.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing, the trial court's judgment declaring the mayor's office vacant is affirmed on the finding that Ms. Bell never met the residency and domicile requirements of the office of mayor of Campti. To the extent that the trial court's judgment suggests that the residency defect might have been curable at some point before suit was filed, the judgment is amended to delete that

17

finding.  Costs of this appeal are assessed against the defendant, Mozella Jeanetter

Bell.

**AFFIRMED AS AMENDED.**

18