# THE SUPREME COURT

OF THE

## STATE OF NEVADA

### JULY TERM, 1913

[No. 2021]

R. M. FLEMING, APPELLANT, *v.* MARY C. FLEMING, RESPONDENT.

1. DIVORCE—JURISDICTION—RESIDENCE OF PLAINTIFF—"RESIDED."

Actual living in the county by plaintiff for the six months is necessary to give the court jurisdiction under Rev. Laws, 5838, providing that divorce may be obtained by complaint to the district court of the county in which plaintiff shall have "resided" six months before suit brought.

"Resided" means permanency as well as continuity.

Actual residence is the place of actual abode; of physical presence—the abiding place.

Legal residence may be merely ideal, but actual residence must be substantial.

Where residence is made the basis of jurisdiction, parties who seek to invoke the power of the court to relieve them from the marriage tie must bring themselves clearly and affirmatively within the jurisdiction of the court.

APPEAL from Second Judicial District Court, Washoe County; *John S. Orr*, Judge.

Action by R. M. Fleming against Mary C. Fleming. From an order denying an order for publication of summons, based on affidavit, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*C. R. Reeves*, for Appellant.

By the Court, McCarran, J.:

This is an appeal from an order made and entered by the judge of the Second judicial district in and for Washoe County denying plaintiff an order for publication of summons.

On the 15th day of January, 1912, the appellant, R. M. Fleming, filed with the clerk of the district court a complaint, by reason of which complaint prayed for a decree of divorce from Mary C. Fleming, his wife. On the 17th day of January, 1912, appellant filed an affidavit in the same court and cause in support of his application for an order directing that service be had upon the defendant, who was a nonresident, by the publication of the summons under the provisions of the statute.

The judge, in refusing the order for publication, took into consideration the complaint on file and affidavit of plaintiff, but stated in substance that from both of these instruments it appeared that there were not sufficient facts to give the court jurisdiction of the subject-matter of the action.

It appears from the complaint on file in this case that the defendant Mary C. Fleming, wife of appellant herein, is a resident of the city of New York. It further appears from the complaint that plaintiff arrived in the city of Reno on the morning of July 11, 1911, and on the following day engaged rooms at 445 South Virginia Street, in that city.

Section 5838 of the Revised Laws provides: "Divorce from the bonds of matrimony may be obtained, by complaint under oath, to the district court of the county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided six months before suit be brought. * * *"

The legislature of Nevada in 1911 passed an act entitled "An act defining what shall constitute legal residence in the State of Nevada." (Stats. 1911, c. 158.)

The statute as approved is as follows: "The legal residence of a person with reference to his or her right of suffrage, eligibility to office, right of naturalization, right to maintain or defend any suit at law or in equity, or any other right dependent on residence, is that place where he or she shall have been actually, physically and corporeally present within the state or county, as the case may be, during all of the period for which residence is claimed by him or her; *provided, however*, should any person absent himself from the jurisdiction of his residence with the intention in good faith to return without delay and continue his residence, the time of such absence shall not be considered in determining the fact of such residence."

For the purpose of securing an order for the publication of the summons in this case, the plaintiff made an affidavit, in which affidavit he set forth the averments of his complaint relative to his residence within Washoe County. The averment is as follows: "*    *    *    The plaintiff arrived at Reno 4 o'clock a. m. July 11, 1911, and registered at the Riverside Hotel on said 11th day of July, 1911, and that upon the 12th day of July, 1911, plaintiff engaged and secured rooms, and took up his residence at 445 South Virginia Street, with Mr. and Mrs. F. M. Schadler, and entered said rooms and remained and occupied and slept in said rooms each and every night from the 12th day of July, 1911, until the 12th day of August, 1911; that prior to the 12th day of August, 1911, the plaintiff was employed by Captain Strover, superintendent of survey of the office of the surveyor-general of the State of Nevada, to go to work for the United States government with a United States surveying party; that upon the 12th day of August, 1911, plaintiff left Reno with said surveying party, and went to Churchill County, and lived in the field in tent and in the open without shelter, moving camp from township to township as surveyed, from August 12, 1911, to November 14, 1911, when said survey party of the United States in which and by which plaintiff was employed was ordered to return to

Reno, and on the 14th day of November, 1911, plaintiff arrived in Reno from said surveying party; that during all this time plaintiff's postoffice address was Reno, Nevada, all mail arriving being forwarded to the field through the surveyor-general's office, all personal belongings that plaintiff has, except field clothing, was continuously in said rooms at 445 South Virginia Street, and at all times said 445 South Virginia Street was his home and since the said 14th day of November, 1911, he has resided and occupied continuously in person his said home; and that it is plaintiff's intention to continue an actual *bona fide* resident of Reno in the future; that he has taken up his residence in Reno with the intention to make the State of Nevada and Reno his permanent residence, and that the same is his permanent home."

Under the provisions of the statute quoted above (section 5838, Rev. Laws) a residence for a period of six months within the county was made a prerequisite for the commencement of an action for divorce from the bonds of matrimony. The act of 1911, aside from the proviso, neither limited nor enlarged upon the original provision of the statute as quoted above. If it did anything, it emphasized the original statute (section 5838, Rev. Laws) by declaring that the legal residence of a person who sought to maintain or defend any suit at law or in equity should be considered that place in which he or she had been actually, physically, and corporeally present within the state or county; hence by the provisions of this statute actual residence, as distinguished from domicile or legal residence, was made the basis upon which courts would determine the status of the party litigant and acquire jurisdiction. In this respect residence must be distinguished from domicile. One may have his domicile in one state, and yet be a resident of another.

It is the contention of the appellant that the word "shall" as it appears in the statute of 1911 should be construed as "may." We do not agree with this contention, however, in that we believe that it was the

intention of the legislature to prescribe that actual, physical presence should be imminently essential to constitute a residence for the purpose of making that residence legal, where the party had any right dependent on residence. It will not be necessary for us to dwell upon the question of domicile in this case and especially in cases of this character. That question applicable to the marriage relation was dwelt upon by the Supreme Court of the United States in the case of *Haddock* v. *Haddock*, 201 U. S. 563, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, and the rule there laid down by Mr. Justice White. The code of civil procedure of the State of Texas is somewhat similar to that of ours, in that it prescribes that no suit for divorce shall be maintained unless the petitioner at the time of exhibiting the petition is an actual *bona fide* inhabitant of the state and shall have resided in the county where the suit is filed six months preceding the filing thereof. (Revised Statutes of Texas, art. 2978.)

The Court of Civil Appeals of the State of Texas, speaking through Mr. Chief Justice Gill, in the case of *Owens* v. *Owens*, 40 Tex. Civ. App. 641, 90 S. W. 664, in discussing a question very much analogous to the one at bar, passing upon the sufficiency of the allegation of residence under the statute, said: "The averment must amount to an allegation of personal presence in the state and an inhabitant for the time required."

In the case of *Haymond* v. *Haymond*, 74 Tex. 414, 12 S. W. 90, the Supreme Court of Texas held that an allegation of residence "that plaintiff is a *bona fide* citizen of Bell County and has been for more than six months" did not satisfy the requirement of the statute, because the allegations may be true, and still the plaintiff may not have been an inhabitant of the county during any of the period covered by the allegation.

Giving to the word "resided," as used in the statute (section 5838, Rev. Laws), its plain, ordinary significance, it must necessarily be construed to require an actual living in the county for six months preceding the filing of

the suit. The word "resided" in its general acceptation carries with it the idea of permanency as well as continuity. It does not mean living in one place and claiming a home in another; it does not mean a constructive or imaginary residence in Washoe County, while actually living or abiding or being in some other county. Our statute as contrasted with similar statutes in other states makes no provision as to residence in the state, but bases the jurisdiction upon the residence in the county, hence actual residence in the county where the suit for divorce is instituted is necessary to convey jurisdiction to the court in which the complaint is filed. In this respect there must be a keen contrast drawn between a mere legal residence, sometimes termed "domicile," and an actual residence. Legal residence consists of fact and intention combined; both must concur, and, when one's legal residence is fixed, it requires both fact and intention to change it. Actual residence, on the other hand, is the place of actual abode, of physical presence—the abiding place. One may have an actual residence in one county and a legal residence or domicile in another.

It is our judgment that the residence required by the statute (section 5838, Rev. Laws) and contemplated by the session act of 1911 was actual residence; that is, physical corporeal presence and not alone legal residence or domicile. (*Tipton* v. *Tipton*, 87 Ky. 243, 8 S. W. 440; *Michael* v. *Michael*, 34 Tex. Civ. App. 630, 79 S. W. 74; *Graham* v. *Graham*, 9 N. D. 88, 81 N. W. 44.)

The proviso in the act of 1911 makes it incumbent upon the litigant who finds himself called from the jurisdiction of his residence to return without delay. It is our judgment that it was not the intention of the legislature, when it made this prescription, that one who sought to avail himself of the power of the court could take up residence in a county for a day or a month, as the case might be, and then go into another state or another county, when not called by emergency, and remain there with no definite time for return. The first part of the statute of 1911 made actual, physical, and corporeal

presence necessary during all of the period for which residence is claimed, hence we think it was not the intention of the legislature to vary or modify that provision, but, on the other hand, in our judgment the legislative department by the proviso made provision for one who by urgent necessity was called from the jurisdiction of his residence, or who absented himself with the intention of returning without delay, or who returned without delay or as soon as the urgency had terminated.

From the allegations of the complaint in the case under consideration, the plaintiff was not physically or actually present in Washoe County between the 12th day of August, 1911, and the 14th day of November, 1911, and his absence from the county was one of an indefinite nature. By reason of his employment and the nature thereof, the length of time during which plaintiff might be absent was wholly uncertain. It might have been terminated in a week, or it might have continued a year. In absenting himself from the county for some months as alleged, it is manifest that it was not his intention to return without delay, as the statute requires. Taking all the circumstances of this case into consideration, it is our judgment that the proviso in the statute would not warrant as long an absence. It may be contended that during all of the time of appellant's absence his domicile or legal residence was in Washoe County, but even that will not relieve him of the positive requirement of the statute that his actual, physical, and corporeal presence within the county constituted the basis of his residence, and, even though his domicile was during all of that time in Washoe County, his physical presence during the greater part of the time being in some other county, Washoe County could not be considered his abiding place during that time. A person's legal residence may be merely ideal, but his actual residence must be substantial.

In our judgment it is not necessary in this case to pass upon the constitutionality of the act of 1911. The former statute (section 5838, Rev. Laws) is of sufficient force and effect to warrant our conclusions herein stated. Suffice it

to say, in view of the inherent powers which governments must possess over the marriage relation, its formation and dissolution in so far as affecting its own citizens is concerned and where the state, through its legislative department, prescribes certain prerequisites as a basis of jurisdiction whereby courts may try and determine the marriage status, or may dissolve the marriage contract, such action is binding in that state as to all parties who seek to avail themselves of the power of the courts in that state, and before they can invoke that power for the purpose of relieving them from the marriage tie they must bring themselves clearly and distinctly and affirmatively within the jurisdiction of the courts, and especially is this true where the question of residence is made the basis of jurisdiction. (*Maynard* v. *Hill*, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; *Haddock* v. *Haddock*, 201 U. S. 569, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1.)

From the foregoing it follows that the judgment of the trial court in denying appellant's petition for an order for publication of summons on the ground that there were not sufficient facts to give the court jurisdiction over the subject-matter of the action should be affirmed.

It is so ordered.