OPINION
 

 Per Curiam:
 

 Appellant Robert Rodgers (“Robert”) seeks a modification of the child support obligations owed by his ex-wife, Sandra Rodgers (“Sandra”). According to Robert, Sandra’s child support payments should be increased to reflect her community property interest in her new husband’s earnings. The district court denied Robert’s motion without explanation. Because we conclude that a parent’s community property interest in a new spouse’s earnings may, under some circumstances, constitute
 
 *1372
 
 proper grounds for modifying a child support award, we reverse the district court’s order and remand for further proceedings.
 

 FACTS
 

 On February 20, 1991, Robert and Sandra divorced. The original divorce decree awarded physical custody of their minor child to Sandra, subject to Robert’s reasonable visitation rights. The original decree also required Robert to pay $250 per month in child support.
 

 On June 13, 1991, pursuant to a stipulation, the district court entered an order modifying the divorce decree. The modified decree, which is still in force, awarded Robert physical custody of the child subject to Sandra’s visitation rights and requires Sandra to pay $125 per month in child support.
 

 Sandra subsequently moved to California and remarried; as a result, on October 16, 1991, Robert filed a motion to further modify the divorce decree. In his motion, Robert asserted, among other things, that Sandra’s community property interest in her new husband’s earnings should be considered in setting her child support payments. Upon reviewing Robert’s motion, a domestic relations referee recommended that Sandra’s child support payments be increased to $247 per month. More specifically, the referee found as follows:
 

 [T]he $125 Plaintiff is currently paying is not a reasonable amount as it is just barely over the statutory minimum. The Referee will presume that Plaintiff is entitled to V2 of her spouse’s net income and that amount should be attributed to her share of the community property income. Plaintiff’s spouse’s net income is $635.78 per week. That amount times 52 weeks and divided by 12 months is $2,752. Plaintiff’s V2 is $1,376. 18 percent is $247. REFEREE RECOMMENDED, child support increased to $247 per month ....
 

 On December 13, 1991, Sandra filed an objection to the referee’s findings and recommendation on the ground that they were unsupported by statutory authority. Robert filed an opposition to Sandra’s objection on December 20, 1991. Thereafter, on April 27, 1992, the district court entered a written order reversing, without explanation, the referee’s findings and recommendation. This appeal followed.
 

 DISCUSSION
 

 Robert asserts that under NRS 125B.070, the district court has discretion to consider a parent’s community property interest in a new spouse’s earnings when setting a child support payment.
 
 *1373
 
 Although NRS 125B.070 does not afford the district court discretion to consider community income, we conclude that, under appropriate circumstances, a noncustodial parent’s community property interest may be taken into account pursuant to NRS 125B.080.
 

 NRS 125B.070(1) sets forth a child support schedule based upon “a parent’s gross monthly income.” “[GJross monthly income” is defined as “the total amount of income from any source of a wage-earning employee or the gross income from any source of a self-employed person.” NRS 125B.070(l)(a). The rules of statutory construction are straightforward: “It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act.” McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). “ ‘[N]o part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided.’ ” Paramount Ins. v. Rayson & Smitley, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970) (quoting Torreyson v. Board of Examiners, 7 Nev. 19, 22 (1871)). When a statute’s language is clear and unambiguous, “there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.” State v. Jepsen, 46 Nev. 193, 196, 209 P. 501, 502 (1922),
 
 cited in
 
 Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990). If, however, a statute is ambiguous, the courts should attempt to follow the legislature’s intent.
 
 McKay,
 
 102 Nev. at 650-51, 730 P.2d at 443.
 

 Here, NRS 125B.070(1)(a) defines a parent’s “gross monthly income” as a wage-earning employee’s total income from any source or a self-employed person’s gross income from any source. Although this section is hardly a model of clarity, we conclude that “self-employed person” refers to the parent, as this section concerns the
 
 parent’s
 
 “gross monthly income.” In addition, given the legislature’s focus on “wage-earning employee” and “self-employed person,” we conclude that “gross monthly income” must be limited to the parent’s income from employment. Otherwise, the terms “wage-earning employee” and “self-employed person” are rendered nugatory. Furthermore, we have previously noted that “the parent’s gross income ... is based solely upon the earnings of the parent.” Lewis v. Hicks, 108 Nev. 1107, 1109 n.1, 843 P.2d 828, 830 n.1 (1992). Thus, the statutory definition of “gross monthly income” does not include a parent’s community property interest in a new spouse’s earnings.
 
 *1374
 
 This conclusion is consistent with
 
 Lewis,
 
 in which we recognized that “[t]he statutory scheme does not authorize consideration of spousal income.”
 
 Id.
 
 at 1112, 843 P.2d at 832.
 

 NRS 125B.080(1)(a) mandates that the district court apply the formula set forth in NRS 125B.070(l)(b) in “determin[ing] the required support in any case involving the support of children.” In addition, the district court is required to apply the statutory support schedule when a parent requests a “change [in] the amount of the required support of [the child].” NRS 125B.080;
 
 see
 
 Hoover v. Hoover, 106 Nev. 388, 389, 793 P.2d 1329, 1330 (1990) (“[W]hen there is a request ‘to change the amount of the required support of children,’ the court ‘shall apply the appropriate formula set forth in subsection 2 of NRS 125B.070.’”). According to NRS 125B.070(1)(b), a parent must pay eighteen percent of his or her gross monthly income to support one child.
 
 [1]
 

 Nevertheless, NRS 125B.080 permits the district court, upon making appropriate findings of fact, to deviate from the statutory schedule. This section sets forth twelve factors for the court to consider in adjusting a child support award: among these is “[t]he relative income of both parents.” NRS 125B.080(9)(1). We have previously construed this provision broadly, to include such things as relative standard of living and financial circumstances. For instance, in Barbagallo v. Barbagallo, 105 Nev. 546, 779 P.2d 532 (1989), the district court applied the statutory formula in a joint custody case. We affirmed the district court’s order and stated that
 

 [w]hat really matters in these cases is whether the children are being taken care of as well as possible under the financial circumstances in which the two parents find themselves. Greater weight, then, must be given to the standard of living and circumstances of each parent, their earning capacities, and the “relative financial means of parents” than to any of the other factors [delineated in NRS 125B.060 and NRS 125B.080],
 

 Id.
 
 at 551, 779 P.2d at 536.
 

 In addition, we noted that “[i]f, for example, the secondary custodian has a much higher standard of living, greater earning capacity and considerably greater financial means than the pri
 
 *1375
 
 mary custodian, the courts must be careful not to allow unwarranted reductions in the formula amount being paid by such a secondary custodian to the primary custodian.”
 
 [2]
 

 Id.; accord
 
 Lewis v. Hicks, 108 Nev. 1107, 1112, 843 P.2d 828, 832 (1992) (recognizing that “[a] trial judge might properly consider spousal contributions where they have a significant impact on recognized statutory factors, such as the parents’ standards of living or their relative financial means”);
 
 see also
 
 Herz v. Gabler-Herz, 107 Nev. 117, 119, 808 P.2d 1, 1-2 (1991) (concluding that the district court may deviate upward from the statutory formula given the ‘“vastly different incomes and financial resources of the [parents]’ ”) (quoting language of the district court).
 

 Considerations such as standard of living and financial means may be intimately connected to community income. Community property law provides that a spouse has a present, vested one-half interest in the other spouse’s earnings.
 
 [3]
 

 See, e.g.,
 
 NRS 123.130, .220, .225; Cal. Fam. Code §§751, 760. In other words, where community property law applies, one-half of the community income and community expenses belongs to each spouse. Stewart v. Commissioner of Internal Revenue, 95 F.2d 821, 822 (5th Cir. 1938). In addition, a spouse’s share of the community property may be liable for that spouse’s premarital debts.
 
 See
 
 NRS 123.050; Cal. Fam. Code § 910. Further, the Internal Revenue Service treats community income as belonging equally to each spouse:
 

 Federal income tax law requires spouses who are domiciled in a community property state to “split” community income, each reporting and paying tax for one-half of it. A nonearning spouse in a community property state who files a separate return is liable for the tax on one-half of the community income earned by the other spouse.
 

 
 *1376
 
 Susan Kalinka,
 
 Federal Taxation of Community Income: A Simpler and More Equitable Approach,
 
 1990 Wis. L. Rev. 633, 633-34.
 

 Thus, although the narrow statutory definition of “gross monthly income” does not encompass community income, an examination of a remarried parent’s “relative income” may properly include consideration of his or her one-half interest in the new spouse’s income. Our conclusion that community income may be considered in determining the parents’ “relative income” is consistent with opinions from other jurisdictions.
 
 See,
 
 e.g., Yost v. Yost, 735 P.2d 988, 990 (Idaho 1987) (concluding that “ ‘the financial resources, needs and obligations of both custodial and noncustodial parents’ encompass their share of the community property of their new marital communities”) (quoting language of trial court),
 
 superseded by
 
 Idaho Code § 32-706 (permitting consideration of noncustodial parent’s share of community property when “compelling reasons exist”); DeTevis v. Aragon, 727 P.2d 558, 563-64 (N.M. Ct. App. 1986) (ruling that “a spouse has a legal obligation to use his or her community property interest, even if derived from a subsequent marriage, to support his or her children”); Smith v. Smith, 534 P.2d 1033, 1034 (Wash. Ct. App. 1975) (holding that in determining whether a substantial change of circumstances has occurred, trial court must consider income available to parent’s new marital community).
 

 In the present case, the district court had discretion, based upon appropriate findings under NRS 125B.080(9)(1), to consider Sandra’s share of community property in adjusting her child support payments. The district court, however, simply “reversed” the referee’s recommendation and gave no reasons for doing so. We are therefore unable to discern the district court’s basis for reversal. In addition, we are unable to determine whether the district court found that Sandra’s present child support obligation is consistent with the statutory formula. Under these circumstances, the district court erred in failing to make specific findings with regard to the amount of Sandra’s child support payments.
 

 For the foregoing reasons, we reverse the order of the district court and remand this case for further proceedings consistent with this opinion. On remand, the district court shall enter appropriate findings with respect to Sandra’s child support obligation.
 

 [1]
 

 As the district court simply “reversed” the recommendation, we are unable to determine whether Sandra’s stipulated child support obligation is consistent with the statutory formula. Moreover, the record on appeal does not contain the requisite certification that Sandra’s stipulated support obligation is consistent with the statutory formula or that a deviation is justified.
 
 See
 
 NRS 125B.080(2).
 

 [2]
 

 In reaching these conclusions, we relied, in part, on former NRS 125B.060, which delineated factors for the court to entertain in setting a support award. In 1989, NRS 125B.060 was repealed.
 
 See
 
 1989 Nev. Stat., ch. 405, § 16, at 861. In
 
 Barbagallo,
 
 however, we determined that
 

 [t]he repeal of this section [125B.060] has no material effect on this opinion as the considerations listed therein are, in the main, covered elsewhere in Chapter 125B or in the body of the opinion, wherein we stress the standard of living and circumstances of each parent, their earning capacity and the relative financial means of parents more than “any of the other factors.”
 

 Barbagallo,
 
 105 Nev. at 551 n.4, 779 P.2d at 536 (footnote missing in Pacific Reporter).
 

 [3]
 

 Spouses do not have to accept community property law; they can opt out by agreement.
 
 See, e.g.,
 
 NRS 123.190, .220; Cal. Fam. Code §§ 850, 1500.