KEVIN MICHAEL WILLIAMS, Appellant, *v.* CLARK COUNTY DISTRICT ATTORNEY, STEWART L. BELL; JAMES A. FERRENCE; MYRNA WILLIAMS; AND NEVADA STUPAK, Respondents.

No. 39897

July 25, 2002                                    50 P.3d 536

Rose, J., dissented in part.

*Michael Stein & Associates, Ltd.,* Las Vegas, for Appellant.

*Stewart L. Bell,* District Attorney, and *Mary-Anne Miller,* Deputy District Attorney, Clark County, for Respondent Clark County District Attorney, Stewart L. Bell.

*Dominic P. Gentile, Ltd.,* Las Vegas, for Respondents Myrna Williams and James A. Ferrence.

*Nevada Stupak,* Las Vegas, in Proper Person.

## OPINION

*Per Curiam:*

In this appeal, we examine the statutory residency requirements for the office of county commissioner as well as the requisites for sustaining a residency challenge. Because we conclude that the district court properly allowed the challenge and correctly determined that the statutory residency requirements were not met, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2002, appellant Kevin Michael Williams filed a declaration of candidacy for the office of County Commissioner, Clark County District E. In his declaration, he stated that his actual residence was 3950 Koval Lane, Apt. 3018, in Las Vegas, Clark County, Nevada, and that, as required by statute, his residence began on a date at least thirty days immediately preceding the closing date for filing candidacy declarations.

Candidacy registration for the county commissioner office closed on May 20, 2002. On June 6, 2002, James Ferrence filed an affidavit with the election department, stating his belief that Williams did not reside at the address under which he filed for office. Ferrence is a principal with an advertising company that represents the current District E County Commissioner, Myrna Williams. While Ferrence attached no documentation to his affidavit, on June 12, 2002, he provided a second affidavit by a private investigator, David Groover.

On June 13, 2002, the district attorney filed a petition in the district court for an order to show cause regarding the validity of Williams' candidacy under NRS 293.182(4), based on the residency issue. Williams owns a house in Henderson, Nevada, in which he lived full-time until April 2002, when he apparently moved, on a part-time basis, to the Koval Lane apartment. The Koval Lane apartment is located in District E, but the Henderson house is not.

The district court entered an order directing Williams to show cause why Ferrence's challenge was not valid, and set the matter for an evidentiary hearing. Williams filed a response to the show cause order and a motion to dismiss the petition on the basis that it was untimely. Myrna Williams then filed a response to Williams' motion to dismiss. After conducting an evidentiary hearing, the district court entered an order sustaining the challenge to Williams' candidacy under NRS 293.182, and directed the Clark County Registrar of Voters to remove Williams' name from the September 2002 ballot. The district court concluded that the Koval Lane apartment address identified in Williams' declaration of candidacy was not his legal address and that he did not live in the commission district for which he filed. Williams filed this appeal.

We conclude that the challenge was timely under NRS 293.182(1), that the challenge substantially complied with the procedural requisites of NRS 293.182(2), and that, as a matter of law, the address stated in Williams' declaration of candidacy failed to meet the statutory actual residency requirements. Accordingly, we affirm the district court's order.

## DISCUSSION

### Timeliness of challenge

Williams first contends that Ferrence's challenge to his candidacy was untimely because it was not filed within the five-day period provided in NRS 293.182(1). NRS 293.182(1) allows a voter to file a written challenge to a candidate's qualifications not later than five days after the last day the candidate may withdraw his or her candidacy:

> After a person files a declaration of candidacy or an acceptance of candidacy to be a candidate for an office, and not later than 5 days after the last day the person may withdraw his candidacy pursuant to NRS 293.202, an elector may file with the filing officer for the office a written challenge of the person on the grounds that the person fails to meet any qualification required for the office pursuant to the constitution or a statute of this state, including, without limitation, a requirement concerning age or residency.

Under NRS 293.202, a candidate may withdraw his or her candidacy for office in writing "within 7 days, excluding Saturdays, Sundays and holidays, after the last day for filing." NRS 293.177(1) provides that the last day a candidate can file a declaration for candidacy is the third Monday in May at 5:00 p.m.

Applying these deadlines to this case, the third Monday in May fell on May 20, 2002, and so the last day for Williams to withdraw his candidacy was Thursday, May 30, 2002. Thus, a written challenge to Williams' qualifications under NRS 293.182 was due five days after May 30, 2002. The parties dispute whether this five-day period excludes Saturday, Sunday, and non-judicial days from its calculation. If we apply a straight five-day period, as Williams argues, then the deadline for filing a challenge fell on Tuesday, June 4, 2002. If, on the other hand, Saturday, June 1, and Sunday, June 2, are excluded from the five-day calculation, as Myrna Williams argues, then the last day for filing a challenge fell on Thursday, June 6, 2002. Because Ferrence's challenge was filed on June 6, 2002, how the five-day period is calculated determines whether the challenge was timely.

We conclude that Saturday, Sunday, and non-judicial days are excluded from the five-day calculation under NRS 293.182(1). The construction of the five-day time period in NRS 293.182(1) is a legal question, subject to independent appellate review.[1] We have previously held that when a statute does not specify how to compute a particular time period, NRCP 6(a) governs the computation.[2] In fact, NRCP 6(a)'s express language provides that when a statute's time period is less than seven days, then Saturdays, Sundays, and non-judicial days are excluded from the computation.

In *Rogers v. State*,[3] we applied NRCP 6(a) to calculate the time under a statute requiring tort claims against the state to be brought within six months (NRS 41.036). More importantly, however, we overruled *Kirk v. Parsons*,[4] a 1960 election case in which we had refused to apply NRCP 6(a) to an election statute that required a candidate, who desired to contest another candidate's nomination, to proceed within five days after completion of the canvass.[5] We stated that *Kirk* was wrongly decided because the special election law referenced in *Kirk* did not specify how to compute the time.[6] Here, by analogy, NRS 293.182(1) does not specify how to compute the five days, and thus NRCP 6(a) applies.

We are mindful that NRS 293.182(4) gives the district attorney "5 working days" after receiving the challenge to petition the district court to order the candidate's court appearance, and that our

---

[1]*See Nyberg v. Nev. Indus. Comm'n*, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984).

[2]*Rogers v. State*, 85 Nev. 361, 364, 455 P.2d 172, 173 (1969).

[3]*Id.*

[4]76 Nev. 442, 357 P.2d 120 (1960).

[5]*See* NRS 294.295 (repealed 1961).

[6]*Rogers*, 85 Nev. at 364, 455 P.2d at 174.

interpretation of "5 days" in section 1 renders superfluous the word "working" in section 4.[7] However, when the legislature adopted NRS 293.182(1) in 2001, it used the same "5 days" language we had previously construed in the context of the former election statute in *Kirk* and *Rogers*. It is reasonable to assume that the legislature was aware that we applied NRCP 6(a) in calculating the time period, and employed its language in a consistent manner.[8] Thus, we conclude that NRCP 6(a) applies to exclude Saturday, Sunday, and non-judicial days from the five-day calculation under NRS 293.182(1), and Ferrence's June 6, 2002 challenge was timely.

*Compliance with procedural requisites of NRS 293.182(2)*

Williams next contends that Ferrence's challenge was insufficient under NRS 293.182(2) because Ferrence's June 6, 2002 affidavit merely stated his belief rather than his personal knowledge that Williams did not reside at the address listed in his declaration of candidacy. Williams further contends that Ferrence failed to attach any supporting documentation or evidence to his affidavit as required by the statute. Although, on June 12, 2002, Ferrence submitted the private investigator's supporting affidavit, Williams argues that the submission was untimely.

NRS 293.182(2) requires that a challenge must indicate the qualification(s) the candidate fails to meet, have attached all documentation and evidence supporting the challenge, and be in the form of an affidavit. First, it is questionable whether Ferrence's affidavit was sufficient, as it was based on belief rather than personal knowledge. NRS 293.182(2) is silent as to whether it permits affidavits on information and belief or requires the affidavits to be based on personal knowledge.[9] Other courts have permitted

---

[7] *Cf. County of Clark v. Doumani*, 114 Nev. 46, 51, 952 P.2d 13, 16 (1998) (providing that the court should interpret a statute to avoid rendering any language nugatory).

[8] *See Silvera v. EICON*, 118 Nev. 105, 109, 40 P.3d 429, 432 (2002) (stating that when the legislature amends a statute without changing the language previously interpreted by the supreme court, it is presumed that the legislature approves the court's interpretation); *Agricultural Ins. Co. v. Biltz*, 57 Nev. 370, 387, 64 P.2d 1042, 1048 (providing that the court must presume that the legislature employed words in a manner previously construed by the court), *modified on other grounds sub nom. Insurance Cos. v. Biltz*, 57 Nev. 389, 64 P.2d 568 (1937).

[9] *See City of Santa Cruz v. Municipal Court*, 776 P.2d 222, 230 (Cal. 1989) (acknowledging that the legislature may expressly authorize the use of affidavits based on information and belief or may require affidavits based on personal knowledge). *Compare* NRS 31.330 (providing that affidavit charging a garnishee with liability may be made upon information and belief), *with* NRCP 56(e) (stating that affidavits supporting or opposing a summary judgment motion shall be made on personal knowledge).

affidavits on information and belief when the facts would otherwise be difficult or impossible to establish.[10] Here, however, facts pertaining to Williams' residency at the Koval Lane apartment were not impossible to establish, as demonstrated by the private investigator's affidavit detailing the investigator's attempts to connect Williams to the Koval Lane apartment.

Even assuming that Ferrence's affidavit alone was insufficient, we conclude that Ferrence substantially complied with the statute by supplementing his affidavit with the private investigator's.[11] The private investigator's affidavit provided detailed information about his unsuccessful attempts to reach Williams at the Koval Lane apartment and his research revealing no connection between Williams and the Koval Lane apartment in the public record.

Ferrence did not attach the private investigator's affidavit to his own affidavit, but submitted it six days later. While NRS 293.182(2) contemplates that the challenging affidavit will have attached all supporting documentation and evidence at the time it is filed, only substantial compliance with this statutory provision is required. Courts have defined substantial compliance as compliance with essential matters necessary to ensure that every reasonable objective of the statute is met.[12] In the context of other election laws, we have required only substantial compliance with statutory requirements.[13] For instance, in *Cirac v. Lander County*,[14] we applied a rule of substantial compliance to a statutory provision concerning the qualifications for electors to sign a petition for relocation of a county seat. We reasoned that a "rule of substantial compliance best furthers the purpose of insuring that only registered voters are engaged in the qualifying procedures."[15]

Here, Ferrence's challenge substantially complied with the statute. NRS 293.182(2)'s requirement that all supporting documentation and evidence be attached to the affidavit is meant to

---

[10]*City of Santa Cruz*, 776 P.2d at 230.

[11]*See generally* NRCP 56(e) (providing that affidavits supporting or opposing a summary judgment motion may be supplemented with further affidavits).

[12]*See, e.g., Orr v. Heiman*, 12 P.3d 387, 389 (Kan. 2000); *Rogers v. Roberts*, 717 P.2d 620, 622 (Or. 1986); *Baker v. Atkinson*, 625 N.W.2d 265, 272 (S.D. 2001).

[13]*See Cirac v. Lander County*, 95 Nev. 723, 731, 602 P.2d 1012, 1017 (1979); *Cleland v. District Court*, 92 Nev. 454, 456, 552 P.2d 488, 490 (1976).

[14]95 Nev. 723, 602 P.2d 1012.

[15]*Id.* at 731, 602 P.2d at 1017.

provide the district attorney with information to make a timely probable cause determination concerning a candidate's qualifications for office. Indeed, if the district attorney determines that probable cause supports the challenge, the attorney must petition the district court, within five working days after receiving the challenge, for an order directing the candidate to appear.[16] Here, Ferrence ultimately submitted the private investigator's affidavit, and the district attorney had an opportunity to review the affidavit before filing the petition. Thus, Ferrence's challenge met the statute's objective.[17]

### Statutory residency requirements

Williams finally contends that the district court erred in determining that he did not legally reside at the Koval Lane address for purposes of NRS 293.1755 and NRS 281.050. In its written order, the district court concluded that the Koval Lane apartment address Williams listed in his declaration of candidacy was not his "legal address" and that he therefore does not live in the commission district for which he filed. Although the district court's written order does not explain the court's reasoning further, the court, in its oral ruling, explained that the Koval Lane address was not Williams' "legal address" because Williams did not have permission from the apartment's owner for an assignment or sublease. Although we agree with the district court's conclusion, we do so for other reasons.[18]

Our review of this residency issue necessarily turns on a reading of two related statutes, NRS 293.1755 and NRS 281.050. NRS 293.1755 requires that a candidate actually reside in the area to which the office pertains at least thirty days before the close of filing for candidacy:

> [N]o person may be a candidate for any office unless, for at least the 30 days immediately preceding the date of the close of filing of declarations of candidacy or acceptances of candidacy for the office which he seeks, he has, in accor-

---

[16]NRS 293.182(4).

[17]We reject Williams' argument that the district attorney did not have probable cause to support the challenge. Even though the district attorney referenced a "scintilla of evidence" standard at the first hearing, the district attorney later clarified at the evidentiary hearing that the correct standard was probable cause. Moreover, given the supplementary private investigator's affidavit, we conclude that the district attorney had enough information to make a valid probable cause determination.

[18]See, e.g., Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) (noting that this court will affirm a district court's order if the district court reached the correct result, even if for different reasons).

dance with NRS 281.050, actually, as opposed to constructively, resided in the state, district, county, township or other area prescribed by law to which the office pertains and, if elected, over which he will have jurisdiction or which he will represent.

NRS 281.050(1) explains that the "residence of a person with reference to his eligibility to office is his actual residence within the state or county or district, as the case may be, during all the period for which residence is claimed by him." Although section 1 focuses on the term "actual residence," NRS 281.050(4) defines "actual residence" in conjunction with "legal domicile": " '[A]ctual residence' means the place where a person is legally domiciled and maintains a permanent habitation." Under this definition, a candidate must meet both actual residency requirements as well as legal domicile requirements in order to run for a particular office. NRS 293.1755(1)'s use of the term "actually resided" and reference to NRS 281.050, when viewed in conjunction with the statutory requirement and definition of "actual residence" in NRS 281.050, requires that the candidate have what is both an actual residence and legal domicile in the pertinent district for at least thirty days before the close of filing for candidacy.

Legal domicile, also known as legal residence, requires both the fact of living at a place and the intention to remain there; if one leaves a domicile temporarily, one must have the intention to return.[19] Similarly, if a person temporarily leaves a legal domicile or leaves for a particular purpose, and does not take up a permanent residence somewhere else, then that person's legal domicile has not changed.[20] In other words, once a legal domicile is fixed, the fact of living elsewhere, the intention to remain in the other residence and the intention to abandon the former domicile must all exist before the legal domicile can change.[21] Actual residence, in contrast, is the place of actual living, of physical presence—it does not require an intent to remain or return.[22] A person may have an actual residence in one place and a legal residence in

---

[19]*Presson v. Presson*, 38 Nev. 203, 207, 147 P. 1081, 1082 (1915); *Fleming v. Fleming*, 36 Nev. 135, 140, 134 P. 445, 447 (1913); *see also Haack v. Ranieri*, 200 A.2d 522, 531-32 (N.J. Super. Ct. Law Div. 1964); *DeBlois v. Clark*, 764 A.2d 727, 734 (R.I. 2001).

[20]*Presson*, 38 Nev. at 207, 147 P. at 1082.

[21]*Id.*; *Blount v. Boston*, 718 A.2d 1111 (Md. 1998); *see also DeBlois*, 764 A.2d at 735.

[22]*Fleming*, 36 Nev. at 140, 134 P. at 447; *Farnsworth v. Jones*, 441 S.E.2d 597, 600 (N.C. Ct. App. 1994).

another, and a person may have several actual residences, but a person may have only one legal residence or domicile.[23]

Similarly, *Black's Law Dictionary* defines ''domicile'' as follows: ''A person's legal home. That place .where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . A person may have more than one residence but only one domicile. . . . It is his legal residence, as distinguished from his temporary place of abode . . . .''[24]

By requiring actual residence as well as legal domicile, NRS 281.050 focuses on the one place where a person is located and intends to remain permanently. Under NRS 293.1755 and NRS 281.050, Williams failed to qualify as a resident of District E in Clark County at least thirty days before the close of candidacy filings.

Evidence introduced at the district court's hearing showed that Williams' legal domicile before April 2002 was his house in Henderson. Williams testified that he spends two nights or more at the Koval Lane apartment each week and approximately two nights each week at the Henderson house. His fiancée and cat still live at the Henderson house. Williams' bills are sent to the Henderson house, his telephone listing identifies the Henderson address, and the Henderson address is still listed with his employer. Additionally, in early April 2002, Williams obtained a second mortgage on the Henderson house, named it as his primary residence and filed a homestead declaration. During the thirty-day period under NRS 293.1755, Williams' driver's license reflected his Henderson address. Although Williams listed the Henderson house for sale in June 2002, suggesting an intent to change his domicile, this event occurred well outside the statutory thirty-day window.

Based upon these facts, Williams never changed his legal domicile from the Henderson house to the Koval Lane apartment, for he still physically resides at his Henderson house and intends to return there on a weekly basis. Even if he could be deemed to have left his Henderson house, it is only on a part-time basis for a particular purpose (to run for commissioner in District E), and he did not take up permanent residence at the Koval Lane apartment.[25] Although the district court did not make express factual findings on the issue of domicile, the record before us, even con-

---

[23]*Fleming*, 36 Nev. at 140, 134 P. at 447; *Herpin v. Boudreaux*, 709 So. 2d 269, 271 (La. Ct. App. 1998); *DeBlois*, 764 A.2d at 734.

[24]*Black's Law Dictionary* 484-85 (6th ed. 1990).

[25]*Presson*, 38 Nev. at 207, 147 P. at 1082.

struing the facts in Williams' favor, demonstrates that, as a matter of law,[26] the Koval Lane apartment was not Williams' legal domicile at least thirty days before the close of candidacy filings.[27] Williams did not timely abandon his Henderson house with the intention to remain permanently in the Koval Lane apartment.[28] His legal domicile remained in Henderson.

Nevertheless, Williams points to the second portion of NRS 281.050(4), which, interestingly, states that "[i]f the [candidate] maintains more than one [permanent] habitation, the place he declares to be his principal permanent habitation when filing a declaration or affidavit pursuant to NRS 293.177 or 293C.185 shall be deemed to be his actual residence." According to Williams, he maintains more than one place of permanent habitation, and he declared the Koval Lane address to be his "actual, as opposed to constructive, residence" in his candidacy declaration. Williams therefore contends that the Koval Lane address must be considered his actual residence.

This second part of NRS 281.050(4), if read alone, is facially inconsistent with the first part of NRS 281.050(4), which requires an "actual residence" to be the place where a candidate is "legally domiciled." In other words, if a candidate with more than one permanent habitation can simply choose which habitation is the "actual residence" for purposes of candidacy, without any consideration of legal domicile, then the requirement of legal domicile, within the definition of actual residence, ceases to exist.

When faced with inconsistent statutory provisions, we turn to the rules of construction. A statute's construction is governed by legislative intent, and we discern this intent from the entire statute, not from a single provision.[29] In determining the legisla-

---

[26]See Randono v. CUNA Mutual Ins. Group, 106 Nev. 371, 376, 793 P.2d 1324, 1327 (1990) (drawing a conclusion as a matter of law, based on the facts in the record and the language of a statute, that appellant was not entitled to relief).

[27]See, e.g., Mobley v. Armstrong, 978 S.W.2d 307, 310 (Ky. 1998) (noting that "[i]f someone's actions conclusively show he resides in one place, his intention to live in another place may not override these facts"); Blount v. Boston, 718 A.2d 1111, 1115 (Md. 1998) (stating that determinative factor in determining a person's domicile is intent, and that intent may be more ascertainable by the individual's acts than his words); DeBlois, 764 A.2d at 735 (acknowledging that a person's intent regarding domicile must necessarily be shown by "objective manifestations" of that intent).

[28]Blount, 718 A.2d 1111; see also DeBlois, 764 A.2d at 735.

[29]A Minor v. Clark Co. Juvenile Ct. Servs., 87 Nev. 544, 548, 490 P.2d 1248, 1250 (1971).

ture's intent, we should consider what reason and public policy indicate was intended, and we should avoid reaching absurd results.[30] We are obliged to construe statutory provisions so that they are compatible, provided that in doing so, we do not violate the legislature's intent.[31] Additionally, we should not render any part of a statute ineffective if such consequence can be avoided.[32] A statute's express definition of a term controls the construction of that term no matter where the term appears in the statute.[33] Finally, we generally presume that a statutory term has its common-law meaning.[34]

With these concepts in mind, we examine the provisions of NRS 281.050(4). The legislature's definition of "actual residence" controls that term throughout the provision, and the term "legally domiciled" contained in that definition is presumed to have its common-law meaning. Thus, although the latter portion of the section suggests that a person with more than one permanent habitation can "choose" his or her actual residence when filing for candidacy, such an interpretation would fail to give effect to the meaning of "actual residence," which requires that it be a candidate's legal domicile. The necessity of "legal domicile" would be rendered ineffective. As previously stated, a person can have but one legal domicile, and cannot simply "declare" this legal domicile, because it, by definition, depends on permanency and intent.[35]

Here, only one reading of NRS 281.050(4) retains meaning in both the first and second parts and provides harmony between the two. The second part, that candidates with more than one permanent habitation may designate one of them to be deemed their actual residence, must be limited by the definition of "actual residence" that precedes it. Thus, a candidate's selection of a principal permanent habitation under the statute must also meet the requirements of legal domicile.

---

[30]*Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521 (1998).

[31]*Bowyer v. Taack*, 107 Nev. 625, 627, 817 P.2d 1176, 1177 (1991); *City Council of Reno v. Reno Newspapers*, 105 Nev. 886, 892, 784 P.2d 974, 978 (1989).

[32]*Rodgers v. Rodgers*, 110 Nev. 1370, 1373, 887 P.2d 269, 271 (1994).

[33]1A Norman J. Singer, *Statutes and Statutory Construction* § 20:8, at 135-36 (6th ed. 2002).

[34]*Evans v. United States*, 504 U.S. 255, 259 (1992); *Lorillard v. Pons*, 434 U.S. 575, 583 (1978).

[35]*Presson v. Presson*, 38 Nev. 203, 207, 147 P. 1081, 1082 (1915); *Herpin v. Boudreaux*, 709 So. 2d 269, 271 (La. Ct. App. 1998); *DeBlois v. Clark*, 764 A.2d 727, 734 (R.I. 2001).

This reading of the statute gives effect to the legislature's intent, to require both physical presence and intent to remain at a residence, and to avoid "sham" residences.[36] It also avoids absurd results: if candidates with more than one residence could simply choose from among them for purposes of actual residence, then they could declare as their primary residence a place where they spend relatively little time and have few community associations. Such a result would conflict with the public policy behind residency requirements for candidates, which is to ensure that elected officials "reside in the communities or districts that elected them so they [are] 'connected' with their constituents and have 'particular knowledge of their affairs.'"[37]

As discussed above, Williams failed to change his legal domicile to the Koval Lane apartment at least thirty days before the close of candidacy filings. Consequently, the apartment cannot constitute his actual residence under the statutes, and the district court properly upheld the challenge to his residency.

## CONCLUSION

Having concluded that the challenge to Williams' candidacy was timely and procedurally sufficient, and that Williams' Koval Lane apartment address did not meet the statutory residency requirements, we affirm the district court's order sustaining the challenge and directing that Williams' name be removed from the ballot.[38]

ROSE, J., concurring in part and dissenting in part:

I agree with the majority's conclusion that the Koval Lane apartment in Las Vegas was not Kevin Williams' legal domicile (your home is where your cat lives, and for Kevin that was not at Koval Lane), and also its analysis of NRS 281.050(4). However, I do not believe NRCP 6(a)—a court rule—should be used in this instance to enlarge the time for filing from 5 to 7 days when the legislature clearly expressed an intent to provide an election challenger only 5 days to act. I conclude that Ferrence's challenge

---

[36]The amendment was discussed at both the 1997 and 1999 legislative session, but approved in 1999. Hearing on A.B. 614 Before the Senate Comm. on Government Affairs, 70th Leg. (Nev., May 13, 1999); Hearing on A.B. 23 Before the Senate Comm. on Government Affairs, 69th Leg. (Nev., March 3, 1997).

[37]James Thomas Tucker, *Redefining American Democracy: Do Alternative Voting Systems Capture the True Meaning of "Representation"?*, 7 Mich. J. Race & L. 357, 389 (2002) (citation omitted).

[38]THE HONORABLE NANCY A. BECKER, Justice, voluntarily recused herself from participation in the decision of this matter.

was untimely, and accordingly I would reverse the district court's decision.

The 2001 legislation expressly provided that a person has 5 days after the last date that a candidate may withdraw his or her candidacy to file a legal challenge under NRS 293.182. Sections (1) and (4) of that statute provide as follows:

> 1.   After a person files a declaration of candidacy or an acceptance of candidacy to be a candidate for an office, and *not later than 5 days* after the last day the person may withdraw his candidacy pursuant to NRS 293.202, an elector may file with the filing officer for the office a written challenge of the person on the grounds that the person fails to meet any qualification required for the office pursuant to the constitution or a statute of this state, including, without limitation, a requirement concerning age or residency.
>
> . . . .
>
> 4.   If the attorney general or district attorney determines that probable cause exists to support the challenge, the attorney general or district attorney shall, *not later than 5 working days* after receiving the challenge, petition a court of competent jurisdiction to order the person to appear before the court.[1]

The statute, on its face, demonstrates that the legislature knew the difference between 5 days and 5 working days, and chose to give only "5 days" within which to file a challenge. When a clear intent to set a specific time limit is shown by a statute, we should accept it and enforce the legislative directive. It is a long-standing legal rule that clear and unambiguous legislation should be enforced as written,[2] and that no word or clause should be made superfluous by our interpretation.[3] The majority baldly admits that its reading does make the word "working" superfluous when NRCP 6(a) is applied, but the majority goes ahead and applies it anyway. This sort of judicial legislation should be avoided when possible, and it is possible in this case.

I would limit our holding in *Rogers v. State*[4] so that NRCP 6(a) is applied only to those time limits where no clear intent is shown by the legislature to exclude additional days. The legislature used both "5 days" and "5 working days" in the same statute, and we have often said that the legislature is presumed to know what it is

[1]Emphases added.

[2]*Cleghorn v. Hess*, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).

[3]*Paramount Ins. v. Rayson & Smitley*, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970).

[4]85 Nev. 361, 455 P.2d 172 (1969).

doing and purposefully uses the specific language.[5] As if the statute were not enough, the legislative history of this law also demonstrates that the legislators were well aware of the difference between 5 days and 5 working days, debated the point, and chose the more stringent 5-day limit to apply to section (1).[6]

And in the future, how will the legislature provide for a 5-day limit when that is exactly what the legislators want? Must the statute say "5 days, and we really mean just 5 days," or must the legislature make the limit 3 days, knowing that the courts will automatically add 2 days to any time limit?

This does not leave Myrna Williams or Ferrence without any remedy. NRS 281.050(3) specifically contemplates that an action for declaratory judgment may be filed in the district court to challenge the claimed residency of a candidate. While this will necessitate the filing of another action, it is an alternative legal path available to those who have not filed a challenge under NRS 293.182(1) within the strict 5-day time limit.

---

[5]*City of Boulder v. General Sales Drivers*, 101 Nev. 117, 118-19, 694 P.2d 498, 500 (1985).

[6]Hearing on A.B. 487 Before the Senate Comm. on Government Affairs, 71st Leg. (Nev., May 2, 2001).