GEORGE CHACHAS, Appellant, v. ROBERT B. MILLER, Respondent.

No. 41461

February 11, 2004

83 P.3d 827

*Patricia D. Cafferata,* Reno, for Appellant.

*Goicoechea, DiGrazia, Coyle & Stanton, Ltd.,* and *Gary E. DiGrazia,* Elko, for Respondent.

*Brian Sandoval,* Attorney General, and *Matthew L. Jensen,* Deputy Attorney General, Carson City, for Amicus Curiae Secretary of State.

*Keith Loomis,* Carson City, for Amicus Curiae Nevada Association of County Clerks and Election Officials.

## OPINION

By the Court, ROSE, J.:

In this appeal, we consider whether Robert B. Miller, who was re-elected mayor of the City of Ely, satisfied the residency requirements to hold the office of mayor. The district court concluded that in order to be eligible to serve as mayor, Miller must have been legally domiciled in Ely for one year prior to being elected. After concluding that Miller satisfied this requirement, the district court dismissed the election contest and complaint for declaratory judgment.

We conclude that the district court erred because not only did Miller have to be legally domiciled in Ely one year prior to his election, he also must have actually resided in Ely for one year prior to being elected mayor. Because Miller did not actually reside in Ely for the required time period, we reverse the district court's order.

### FACTUAL AND PROCEDURAL HISTORY

On February 3, 2003, Miller filed his declaration of candidacy for re-election as mayor of the City of Ely. On April 8, 2003, Miller received fifty-two percent of the vote in the primary election, as a result of which Miller was the only candidate placed on the ballot for the general election.

On April 22, 2003, George Chachas filed an election contest, or in the alternative, a complaint for declaratory judgment regarding Miller's qualifications to be mayor, arguing that Miller did not satisfy the residency requirements for mayoral candidates.

The district court held a hearing on May 6, 2003. Miller testified that he was born in Ely in 1945, and that he had not left the city for any significant period during his lifetime. Miller explained that his mother was having health problems and difficulty paying her bills, so he moved her from St. George, Utah, to Ely in 2000. According to Miller, he was unable to find a suitable residence for his mother and himself in Ely. Thus, in June 2000, Miller and his mother purchased a home in Mineral Heights, an area abutting, but outside, the Ely city line.

During this time, Miller also rented a room above Carol's Country Store in Ely. Although Miller had previously resided in an apartment in Ely, he explained that he rented the room instead of keeping the apartment because he could not afford to pay rent for the apartment and pay the mortgage on the Mineral Heights residence. Miller stated that he initially intended to split time between the room in Ely and the Mineral Heights residence, but that it became impractical to do so due to his mother's health. Miller admitted that he only spent one night in the room in Ely. Nevertheless, Miller testified that he always considered Ely his legal residence, and that he planned to return to living in the city when he no longer needed to care for his mother. Miller received his mail at a post office box in Ely, owned commercial property in the city, kept his bank accounts in the city, and went to work in the city every day.

In February 2002, Miller's mother was hospitalized after a severe fall and was later admitted to an assisted care facility. In December 2002, Miller purchased a home in Ely, and he moved out of the Mineral Heights residence in early January 2003.

Donna Bath, the White Pine County Clerk, Court Clerk, and Registrar of Voters, explained that Mineral Heights is in White Pine County, but it is not part of the City of Ely. Bath stated that in 2001, Miller changed his voter registration address to the address of the room he rented in Ely, and then in February or March 2003, Miller requested a change of address for his voter registration to the address of the home he had purchased in Ely in 2002. However, Bath had to deny the request because Miller was a challenged voter following Chachas' complaint that Miller's actual address was not the same address as the one on his voter registration—the room he rented in Ely. When Miller tried to vote in the primary election, Bath asked Miller to swear that his actual address was the one listed on his voter registration, but Miller refused to do so.

The district court concluded that, based on the evidence presented, Miller met the residency requirements of NRS 266.170, as he did not relinquish his legal domicile when he moved to Mineral Heights. Additionally, the district court concluded that Miller had satisfied NRS 293C.185's thirty-day residency requirement, a prerequisite for filing for candidacy in city elections.

## DISCUSSION

NRS 266.170 provides: ''Mayors shall be qualified electors within their respective cities and shall have been actually bona fide residents thereof for a period of at least 1 year next preceding their election.'' In addition, NRS 281.050(1) explains that ''[t]he residence of a person with reference to his eligibility to office is his

actual residence," and NRS 281.050(4) defines the term "actual residence" as "the place where a person is legally domiciled and maintains a permanent habitation."

In *Williams v. Clark County District Attorney*,[2] this court addressed the meaning of the residency requirement of a similar statute, NRS 293.1755. NRS 293.1755(1) provides that a candidate must have, in accordance with NRS 281.050, actually, as opposed to constructively, resided in the area where he plans to hold office for thirty days prior to the close of filing for candidacy. This court held that "a candidate must meet both actual residency requirements as well as legal domicile requirements in order to run for a particular office."[3] This court explained that its interpretation of the residency requirement as necessitating both physical presence and intent to remain at a residence gives effect to the Legislature's intent to prevent " 'sham' " residences, and avoids absurd results because "if candidates with more than one residence could simply choose from among them for purposes of actual residence, then they could declare as their primary residence a place where they spend relatively little time."[4]

In this case, the district court concluded that the residency requirement in NRS 266.170 only required legal domicile for the year prior to being elected mayor. The district court found that Miller had significant contacts with Ely for over thirty years—he was the mayor of the city, owned property and rented a room in the city, maintained a mailing address in the city in the form of a post office box, retained his bank accounts in the city, and maintained a driver's license with a mailing address in the city. The district court also found that Miller never intended to change his legal domicile from Ely when he moved to Mineral Heights. Therefore, the district court concluded that Miller satisfied the one-year residency requirement in NRS 266.170.

We agree with the district court's conclusion that Miller did not relinquish his legal domicile in Ely. This court has observed that legal domicile "requires both the fact of living at a place and the intention to remain there; if one leaves a domicile temporarily, one must have the intention to return."[5] Further, "once a legal domicile is fixed, the fact of living elsewhere, the intention to remain in the other residence and the intention to abandon the former domicile must all exist before the legal domicile can change."[6]

Miller moved to Mineral Heights to care for his ailing mother after being unable to find a suitable home in Ely. The evidence shows that

[2]118 Nev. 473, 50 P.3d 536 (2002).

[3]*Id.* at 482, 50 P.3d at 542.

[4]*Id.* at 486, 50 P.3d at 544.

[5]*Id.* at 482, 50 P.3d at 542.

[6]*Id.*

Miller always intended to return to Ely, and that he maintained significant contacts with the city. As a result, we conclude that Miller's legal domicile for the relevant time period was Ely.

However, applying our holding in *Williams,* we conclude that NRS 266.170 also requires actual residency in the city for one year prior to being elected. Accordingly, the district court should have determined whether Miller was both legally domiciled in and an actual resident of Ely.

This court has explained that actual residence is ''the place of actual living, of physical presence—it does not require an intent to remain or return.''[7] In addition, this court has noted that a person could have an actual residence in one place and a legal domicile in another.[8] Although Miller rented a room in Ely, he admitted that he slept there only one night during the time he rented it. Miller lived at the Mineral Heights residence with his mother and his pets; therefore, it appears that Miller was an actual resident of Mineral Heights, while his legal domicile remained in Ely.[9]

Miller argues that he substantially complied with NRS 266.170, since he was a long-time resident of Ely and merely moved to an area abutting the city for a temporary period. We reject this argument because NRS 266.170 requires both legal domicile and actual residency. Miller only actually resided in Ely for one night during the required period and, thus, did not substantially comply with the actual residency requirement of NRS 266.170.

Miller also argues that NRS 281.050(1), which states that if a ''person absents himself from the jurisdiction of his residence with the intention in good faith to return without delay and continue his residence, the period of absence must not be considered in determining the question of residence,'' supports his claim that the time he spent living in Mineral Heights did not affect his residency for purposes of NRS 266.170. We conclude that NRS 281.050(1) only applies when determining legal domicile, not actual residency.[10] Given that Miller had to demonstrate both legal domicile and actual residency in Ely for one year prior to the mayoral election, his reliance on NRS 281.050(1) is misplaced.

---

[7]*Id.*

[8]*Id.* at 482-83, 50 P.3d at 542.

[9]*See id.* at 486, 50 P.2d at 545 (ROSE, J., concurring in part and dissenting in part) (suggesting that a person's actual residence is where his pets reside).

[10]*See id.* at 482, 50 P.2d at 542 (noting that if a person temporarily leaves a legal domicile and does not take up a permanent residence somewhere else, then his legal domicile has not changed, while actual residence is the place of actual living and does not require an intent to remain or return).

## CONCLUSION

Because actual residency and legal domicile in a city for one year prior to being elected mayor of that city is necessary, we conclude that the district court erred in ruling that Miller satisfied the residency requirement of NRS 266.170. Having so concluded, we need not address whether Miller satisfied the thirty-day residency requirement provided in NRS 293C.185.[11] Accordingly, we reverse the district court's order and remand for further action consistent with this opinion.

SHEARING, C. J., AGOSTI, BECKER, MAUPIN, GIBBONS, JJ., and LEAVITT, D. J., concur.

---

[11]NRS 293C.185 requires that a candidate declare that he has actually, as opposed to constructively, resided in a city at least thirty days immediately preceding the date of the close of filing of declarations of candidacy.